(63 South. 878.)

No. 20,211.

STATE v. LANNING.

(Dec. 1, 1913. Rehearing Denied Jan. 5, 1914.)

*(Syllabus by Editorial Staff.)*

1. CRIMINAL LAW (§ 814*)—INSTRUCTIONS—APPLICABILITY TO EVIDENCE—EMBEZZLEMENT.

In a prosecution for embezzlement by the president of an insurance company who was engaged in selling its stock for a commission of $5 a share, where the defense claimed that he properly retained $5 per share out of the general cash proceeds of the sale of stock, even though the stock was sold for part notes and part cash, a requested charge that, if the money referred to in the information was used by accused in paying the company's bills and not converted to his own use, he was not guilty of embezzlement, though he was not instructed to pay such bills, was properly refused, being inapplicable to the evidence where it appeared that the only sum to be deducted was the $5 per share, and as placing no limit upon the proportion of cash which the accused might take upon the sale of stock, while he interpreted the contract as allowing him to take only $5 cash for each share sold.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1821, 1833, 1839, 1860, 1865, 1883. 1890, 1924, 1979–1985, 1987; Dec. Dig. § 814.*]

2. WITNESSES (§ 37*)—EVIDENCE—ADMISSIBILITY.

In a prosecution for embezzlement by the president of an insurance company who had charge of its affairs, a witness, who succeeded the original bookkeeper, may testify that she and accused went over the books and found them correct; the witness not testifying as to the correctness of the previous entries but that accused admitted that they were correct.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 80–87; Dec. Dig. § 37.*]

3. CRIMINAL LAW (§§ 1036, 1091*)—APPEAL—PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW—NECESSITY.

To take advantage on appeal of the improper admission of evidence, the bill of exceptions must show the grounds for the objection and the error complained of, for the objection must be made below, so as to give the trial judge an opportunity to correct his error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1631–1640, 2639–2641, 2803, 2815, 2816, 2818, 2819, 2823, 2824, 2828–2833, 2843, 2931–2933, 2943; Dec. Dig. §§ 1036, 1091.*]

4. CRIMINAL LAW (§ 706*)—EVIDENCE — EXAMINATION OF WITNESS.

In a prosecution for embezzlement by the president of an insurance company, evidence *held* sufficient to show that certain notes delivered by him to the company in payment of stock were of such a character that the prosecutor, in examining witness as to these notes, might properly refer to them as bogus and fictitious.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1661; Dec. Dig. § 706.*]

Appeal from First Judicial District Court, Parish of Caddo; John R. Land, Judge.

W. C. Lanning was convicted of embezzlement, and he appeals. Affirmed.

Lewell C. Butler, of Shreveport, for appellant. R. G. Pleasant, Atty. Gen., and W. A. Mabry, Dist. Atty., of Shreveport (G. A. Gondran, of Donaldsonville, of counsel), for the State.

PROVOSTY, J. The accused was convicted of embezzlement, and sentenced to seven years in the penitentiary, and has appealed.

He was president of an insurance company duly organized but not having as yet one-half of its capital stock of $300,000 paid in, and therefore not yet qualified under the laws of this state to write insurance. The par value of each share of the capital stock of the company was $15; but the selling price was fixed at $25. Five dollars of this added $10 was for creating a surplus fund, and $5 was for defraying the expense of selling the stock. By a special contract with the company the accused took in hand this selling of the stock, agreeing to bear all expenses incident thereto and to receive the said $5 per share in full compensation. After he had been operating under this contract for some nine months, and had received as the price of stock sold a large amount in notes and $42,000 in cash, and had turned over to the company only $12,000 of this cash, the present prosecution was instituted. The particular money charged to have been embezzled is $500, received in cash, and deposited

to his own account in bank as to him belonging. While he did not account in cash to the company for $20 of every $25 received, he did account in cash and notes for $20 for every share of stock sold. Among these notes, however, were his own to the amount of $10,000, for 500 shares sold to himself, which notes were worthless. Whether he was authorized to sell the stock on a credit and take notes for the price does not appear positively, but we gather that the directors of the company were cognizant of his doing so, and approved of it.

His defense was that he interpreted his contract with the company as authorizing him to use the cash part of the price of the sales in defraying the expenses of selling the stock, up to the amount of $5 per share, and to account to the company for its $20 per share in the remainder of the cash and in notes; and that this was what he did; and that, even if he was mistaken in that interpretation, it can only make him civilly, not criminally, liable, there having been no intent on his part to defraud.

The judge took a different view and instructed the jury that the sale of each particular share of stock constituted a separate transaction, out of the price of which the accused was entitled to take $5; and that under his contract with the company the expenses of selling the stock were to be at his personal charge; and that, if for defraying them he used any part of the price of the sale of any one share beyond the $5 to which he was entitled, he converted it to his own use and was guilty of embezzlement.

[1] The accused excepted to this charge as a whole. But, realizing that a vague and general objection of that kind could not be of any avail, he sought to secure an instruction embodying his line of defense by requesting that the following charge be given:

"In this case, if the money referred to in the information was used by defendant in paying the company's bills, and not converted to his own use, even though he was not instructed to pay said bills, this feature tends to establish the fact that embezzlement and conversion to his own use was not the intention of the defendant."

This requested charge was not applicable to the facts. It would have been applicable only if the evidence had shown that bills other than those incident to the selling of the stock had been paid out of this cash, and that these other bills were those of the company, whereas it is not pretended that anything of that kind was shown. And, even if understood as having reference only to the bills incident to the selling of the stock, it still is inapplicable, since it places no limit upon the proportion of the cash which might be thus used, whereas, under the interpretation put upon the contract by the accused himself, this proportion was limited to $5 per share.

[2] The sales of stock as soon as made were reported to the bookkeeper to be entered on the books, both those made by the accused in person and those made through subagents; and these last were often thus reported and entered on the books in the absence of the accused; and there was a change of bookkeepers. When this change took place, the accused and the new bookkeeper went over the books as kept by the former bookkeeper and found them correct. The testimony of the new bookkeeper as to those parts of the accounts antedating her employment was objected to on some ground not expressly stated in the bill but which, from the bill as a whole, we gather to have been that this bookkeeper could not have any personal knowledge of the correctness of these previous entries.

The witness was not called upon to testify to the correctness of these previous entries but only to the fact that there were such entries and that the accused had gone over them and admitted their correctness. This

was testifying to matters entirely within her knowledge.

The point is argued in the brief as if the objection had been that the books were the best evidence, and should themselves have been offered, and not oral evidence of their contents. But the bill does not show that this objection was made; nor does it show that the books were not offered in evidence.

[3, 4] After the prosecution had shown that the note of accused for $10,000 turned over to the company was worthless, it sought to show that certain other notes, which had been turned over by accused to the company as having been given in payment for shares of stock of the company by a number of persons residents of different small towns of the state, were equally worthless. For that purpose the testimony of the same bookkeeper was offered, to the effect that she had repeatedly mailed letters to the addresses of these persons, as given by the accused, and that the letters had always returned with the indorsement "No such person here." To this testimony the accused objected, but on what ground is not stated in the bill, which reads as follows:

"Be it known and remembered that on the trial of this case the attorney specially employed by the state for the prosecution of the defendant, and acting as district attorney, together with said officer, asked his witness, in the examination in chief, upon the proof of the state in the first instance, about certain bogus or fictitious notes in the possession of the company, delivered to it by the defendant; the terms 'bogus', etc., being used by the attorney and not so described by the witness.

"Counsel for the defendant warned the state's attorney that he could not use such terms, but that proof must be adduced that such notes were fictitious. He thereupon proved by the witness that letters had been sent through the mails to the makers of said notes, at their last-known address, and that same were returned with the postmark, 'No such person here.' This over defendant's objection, but the evidence was admitted, with the statement of the trial judge that such evidence was 'just like a sheriff's return and was admissible.'

"Counsel, on four separate occasions, each time against counsel for defendant's protest, described said notes as bogus and fictitious and did so again in argument of the case, to all of which objections and bills of exception were reserved.

"This is contended for by defendant as calculated to prejudice the jury, by its constant repetition, although the judge charged the jury that they should not consider same, and decide the case by the evidence. To which ruling counsel for the defendant duly excepted.

"And the court admitted said evidence for the following reasons:"

The per curiam of the court does not, any more than does the bill, state what was the ground of objection to the said testimony. We will say in general of this per curiam that it recites the facts as hereinabove given, and proceeds to recite a number of other facts for the purpose of showing that, even if there was error in the ruling complained of, it was harmless because these other facts showed conclusively the guilt of the accused.

So far as appears from this bill the accused contented himself with objecting to the evidence without stating the grounds of his objection. The bill is therefore fatally defective.

"The objection must state the grounds thereof and point out specifically the errors complained of in order that an opportunity may be given [the trial judge] to correct them; if not sufficiently specific it will not afterwards avail the party raising it." Eng. of Pl. & Prac. vol. 8, p. 163.

"The bill must show that the grounds thereof were specifically and clearly stated." Id. vol. 3, p. 411.

"It is not essential that both the grounds of objection and the reasons for the ruling should be incorporated; it suffices if the former are set forth." Marr, Crim. Juries. p. 850.

See cases there cited, and also State v. Red, 32 La. Ann. 821; State v. Green, 36 La. Ann. 185. Counsel for the accused does in his brief state these grounds specifically, but the useful time and place for stating them was before the trial judge, before verdict; and the bill should show affirmatively, and not by mere, more or less vague, inference that they were so stated, and a full opportunity afforded the trial judge to rule upon them.

While the learned trial judge in his per curiam says that the term applied by counsel for the state to these notes was the word "worthless," he does not expressly deny that the terms "bogus and fictitious" were thus applied. And he says that the worthlessness of these notes was an inference drawn not exclusively, or necessarily, from the testimony of the bookkeeper regarding the returned letters, but justifiably from the other evidence in the case, and he makes a statement of this other evidence. He adds that he instructed the jury to pay no attention to the words used by the state's attorneys in putting questions to the witnesses but to try the case solely on the testimony of the witnesses.

Assuming the condition of the proof in the case to have been as stated by our learned brother, as we have no doubt it was, we think that the inference of bogus and fictitious character of these other notes was sufficiently strong to have justified the use of those expressions in referring to them in putting questions and in argument.

Judgment affirmed.