LAND, J.
 

 Defendant was indicted for murder, convicted of manslaughter, and sentenced to the state penitentiary for a term of not less than one year nor more than five years.
 

 The appeal to this court by defendant presents for our consideration ten bills of exceptions.
 

 Bill No. 1.
 

 Article 333 of the Code of Criminal Procedure provides that the trial shall proceed in the following order: “The. reading of the plea to the jury; the opening statement of the district attorney explaining the nature of the charge and the evidence by which he expects to establish the same, etc.”
 

 In compliance with the above requirement, the district attorney made the following opening statement to the jury: “Gentlemen, the State expects to prove that this killing happened in the Parish of Tangipahoa, State of Louisiana, and that Joe Ricks killed Fred
 
 *512
 
 Gill; that he was killed by a gunshot wound in the abdomen in his, Ered Gill’s home, and the State contends that Fred Gill was murdered, and expects to prove by the surroundings and physical facts that he was murdered; and expects to prove that the time he was killed witnesses heard an altercation that lasted some ten minutes or more before the gun was fired; the State expects to prove that Joe Ricks, defendant, when arrested had his knuckles skinned on his fist, and that Ered Gill had several bruises on his body other than the gunshot wound. I have some other facts that go to bear out those facts, but will not state them now.”
 

 Counsel for defendant objected to the last part of the statement of the district attorney, that he had “some other facts that go to bear out those facts,” but would not state them then, on the ground that it was not such a full statement of the facts as was re; quired by law.
 

 This objection was overruled by the trial judge for the reason that the statement made by the district attorney complied with the law’s requirements with respect to the opening statement that he should make to the jury.
 

 In our opinion, the ruling complained of by defendant is correct.
 

 The district attorney gave to the jury a summary of the ultimate facts upon which he relied for conviction. This was a substantial compliance by that officer with article 833 of the Code of Criminal Procedure.
 

 As stated in People v. Van Zile, 73 Hun, 534, 26 N.
 
 Y.
 
 S. 390, 393: “It is to be observed, preliminarily, that there is no legal rule for the measurement of an opening, either in a criminal or civil action. It is the legitimate office and purpose of an opening in a criminal action to give the charge against the accused, and the evidence to be presented by the public prosecutor to establish the commission of the crime, and its perpetration by the defendant. Its scope and extent must be controlled by the trial judge, in the exercise of a wise discretion, and it would require a plain violation of the rights of a defendant to induce an appellate tribunal to reverse a conviction for an erroneous opening for the prosecution. What is said in an opening has no binding force, and it is designed o.nly to give a general acquaintance with the case, to enable the jury to understand and appreciate the testimony as it falls from the lips of the witnesses.”
 

 Defendant does not pretend to incorporate in his bill any material fact proven by the state at the trial, which was not given by the district attorney to the jury in his opening statement; nor does defendant either allege or show in his.bill any injury or prejudice to himself occasioned by the omission of which he complains. Article 557, Code Cr. Proe.
 

 Bills Nos. 2, 4, 5, 6, 7, and 8. ,
 

 The wife of the deceased was asked by counsel for defendant on direct examination the following question: “Mrs. Gill, what was your husband’s, Ered Gill’s habit with reference to drinking?”
 

 The district attorney objected to this question, and the objection was sustained by the trial judge.
 

 It is stated in bill No. 2 that the testimony sought to be elicited by the question was for the purpose of showing by this witness that Fred Gill, the deceased, was addicted to the habit of getting drunk, and by other witnesses that, while drunk, deceased was quarrelsome, irritable, overbearing, and of a dangerous character. It is also stated in the bill
 
 *514
 
 that, had this testimony been admitted, it would have corroborated, supported, and established defendant’s plea of self-defense.
 

 Bills Nos. 4, 5, 6, 7, and 8 were all reserved to the ruling of the court in sustaining objections to the testimony of various witnesses for the defendant, by whom it is contended that the defendant could have proven at least four specific instances in which the deceased, while drunk, showed by his acts that he was of a dangerous and determined character.
 

 The trial judge also sustained the objection made by the district attorney to this evidence.
 

 In the recent case of State v. Wilson Sharpe (La. Sup.) 127 So. 368, 369,
 
 [1]
 
 it is said: “There can be no question that, under the plea of self-defense, under proper circumstances, the defendant has the right to show the dangerous character of the deceased, but this must be shown, not by proof of specific acts, but by evidence of his general reputation as a dangerous person. Thus, as said in 30 C. J. p. 174, § 397, Yerbo ‘Homicide’: ‘The inquiry as to the character of deceased must relate solely to his general character for violence, ferocity, vindictiveness, or bloodthirstiness. Thus, it is not admissible to prove decedent’s general bad conduct or immorality. * * * Deceased’s character must be shown by general repute in the community and not by evidence of specific acts. * * * ’ See, also, State v. Fontenot, 50 La. Ann. 537, 23 So. 634, 69 Am. St. Rep. 455.”
 

 Counsel for defendant states in his brief: “That proof of an overt act and hostile demonstration on the part of the deceased toward the defendant
 
 is undisputed, and was so conelttsive that it satisfied the trained mind of the court.”
 

 It is plain, therefore, that the exclusion of the evidence tendered did not deprive defendant of sufficient proof to establish clearly and convincingly an overt act upon the part of the deceased.
 

 Even if the habit of the deceased as to drinking and proof of specific acts were admissible, such evidence in the present case would be wholly irrelevant and immaterial, as there is no proof that deceased was intoxicated at the time of the homicide. His alleged turbulent and dangerous character, when under the influence of liquor on other occasions, is therefore beside the question.
 

 We do not concur with able counsel for defendant in the contention that the Code of Criminal Procedure has changed the former jurisprudence of the state, and that now, under articles 441 and 482, evidence of specific acts is admissible to prove general reputation.
 

 Article 441 declares that:
 

 “Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent.
 

 “Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible.”
 

 Article 482 provides that: “In the absence of proof of hostile demonstration or of overt act on the part of the person slain or injured, evidence of
 
 his dangerous character
 
 or of his threats against accused is not admissible.”
 

 Article 479 states positively that:
 
 “Character, whether good or had,
 
 depends upon
 
 the general reputation
 
 that a man has among his neighbors, not upon what particular persons think of him.”
 

 All of these articles are found under the common head “Of Character Evidence,” chap
 
 *516
 
 ter 9 in the Code of Criminal Procedure. The declaration in article 479 that “character, whether good or bad, depends upon
 
 the general reputation
 
 that a man has,” is but another way of stating the long-established rule in this state that bad or dangerous character cannot be proven by specific acts.
 

 Bill No. 3.
 

 On cross-examination by the district attorney, the wife of the deceased was asked the following question: “Why is it you evade this thing?”
 

 She appeared in the case as a witness for the defendant, and was interrogated by the state’s attorney about her husband’s hat at the time of the killing.
 

 In the course of a cross-examination covering a page and a half of the record; the witness stated, at one time, that Hoggett and the two Jacobsens moved the safe from one side of the kitchen to the other after the homicide, and that the hat was on top of the safe.
 

 The witness later testified that she did not know who moved the safe or where the hat was at the time of the killing.
 

 The district attorney then said to the witness: “Why do you evade this thing?”
 

 Counsel for defendant merely objected and reserved a bill to the remark of the district attorney. He did not request the court to take any action in the matter and none was taken.
 

 We are not advised by the bill as to the materiality or relevancy of this testimony, and, under all of the circumstances of the case, we do not feel satisfied that any prejudice or injury resulted to the accused sufficient to annul the verdict and remand the case for a new trial.
 

 Bill No. 9.
 

 After the jury had retired and deliberated two hours, it requested to be brought back into the courtroom for further instructions.
 

 When the jury was brought in, one of the members tendered the court the following written question on the back of a blank check: “Would'it be permissible to return a verdict of manslaughter, and ask the mercy of
 
 the
 
 court?” .
 

 The court
 
 turned to the jury
 
 and said, “Tes, sir.”
 

 The jury started
 
 to retire, when
 
 counsel for defendant asked to be informed as to what the proceeding was. The judge then opened the slip of paper and read the question to counsel for defendant, who objected and reserved a bill of exceptions.
 

 At this juncture, the district attorney requested the court to charge the jury as to the law applicable to the four verdicts that they could return. The court l’eplied that it was not necessary.
 

 Defendant’s counsel complains that the communication between the court and the jury was a secret and outside communication, in violation of article 394 of the Code of Criminal Procedure.
 

 This article provides that: “Prom the moment of the acceptance of any juror until the rendition of verdict or the entry of a mistrial, as the case may be, the jurors shall be kept together under the charge of an officer in such a way as to be secluded
 
 from all outside communication; .
 
 provided that in cases not capital the judge may, in his discretion, permit the jurors to separate at any time before the actual delivery of his charge.”
 

 Article 396 of the Code declares: “Should the jury or any member thereof, after having
 
 *518
 
 retired to deliberate upon the verdict, wish further instructions, the officer in charge shall bring the jury into court, and the judge shall, in 'the presence of accused, his counsel, if he have counsel, and the district attorney, further instruct the jury, provided such further instructions may be verbal.”
 

 In view of the last article, we are at a loss to understand how the communication of the jury with the court in this case can be appropriately termed an “outside communication,” which can take place only when a juror comes in contact with some member of the general public, either through separation of the jury or otherwise.
 

 The jury had a perfect legal right to ask for additional instructions. The jurors were brought into court for that purpose. The judge was on the bench. The accused, his counsel, and the district attorney were all present.
 

 It is true that the act of handing to the trial judge a slip of paper with a request written thereon for further instruction, without making such request audibly from the jury box, was informal. At the same time, counsel for defendant Was present. He was made aware of the nature of the additional instruction desired. He objected and reserved a bill before the jury retired. He was given opportunity to protect fully the rights of the defendant.
 

 But able counsel did not include in his bill a single specific objection now made to the action of the court, but merely objected. Nor did he request the court to charge the jury, at the time, that a recommendation to mercy was not binding on the trial judge. Under such circumstances, defendant’s counsel cannot be heard to complain,- at this late date, that the approval by the corirt of a verdict of manslaughter, with recommendation of mercy to the court, misled the jury as to the legal and binding effect of such a verdict.
 

 Nor can defendant’s counsel be heard to complain that it was an approval by the court of a verdict before rendition by all of the jurors, and was tantamount to an instruction that the verdict was proper, although same had not been agreed upon by the jurors.
 

 Neither can defendant’s counsel be heard to complain that the refusal of the court to charge again the four verdicts that could be rendered in the ease, as requested by the district attorney, was equivalent to an instruction to the jury that the verdict was correct, and that it was useless to explain any further to them regarding the verdicts which they could legally render.
 

 It is well settled that a bill of excepceptions must state the grounds of objection and point out specifically the errors complained of, in order that an opportunity may be given the trial judge to correct them; if not sufficiently specific, it will not afterwards avail the party raising it. State v. Lanning, 134 La. 209, 214, 63 So. 878 ; State v. Red, 32 La. Ann. 821 ; State v. Green, 36 La. Ann. 185.
 

 Counsel for defendant states in his brief these objections to the charge specifically, but the useful time and place for stating them was before the trial judge before the verdict.
 

 The charge was not given out of the presence of the defendant, nor out of the presence of his counsel. Consequently, article 392 of the Code of Criminal Procedure has not been violated, as contended by defendant’s counsel.
 

 It is provided in article 402 of the Code that: “If the verdict be incorrect in form or
 
 *520
 
 not responsive to the indictment, the judge shall refuse to receive it, and shall remand the jury, with oral instructions as to what verdicts are permissible and as to proper form.” • ■
 

 It is also provided in article 410 of the Code that: “In any case, not capital, any qualification of or addition to a verdict of guilty, beyond a specification of the crime as to which the verdict is found is without effect upon the finding.”
 

 In the preceding article, 409, it is declared that: “In all capital cases the jury may qualify its verdict of guilty with the addition of ‘without capital punishment,’ in which case the punishment shall be imprisonment at hard labor for life.”
 

 Defendant has not been convicted of a capital offense. Consequently, the addition of recommendation to the mercy of the court to the verdict of manslaughter, returned in this case, is without binding effect upon the finding, and does not render the verdict defective or informal, as argued by counsel for the defense.
 

 Bill No. 10.
 

 This bill was taken to the action of the court in overruling a motion for a new trial. The first ground of the motion is that the verdict of the jury is contrary to the law and the evidence. The second ground is that the state relied solely on circumstantial evidence for a conviction, and that the circumstances relied on did not in the least show any guilt in the accused, much less did they exclude every reasonable hypothesis of innocence, as the law requires. The third ground is that the evidence established a perfect case of self-defense. The fourth ground is that, taking all of the testimony in the case as true, it does not show that defendant is guilty of a crime.
 

 In its final analysis, each of these grounds is nothing more nor less than the contention that the evidence in the case was not sufficient to convict the defendant.
 

 In uniform obedience to the constitutional mandate that in criminal cases the jurisdiction of this court shall be restricted on appeal to questions of law alone, we have repeatedly held that we will not review in any criminal case the facts affecting the guilt or innocence of the accused, in order to ascertain if such facts are sufficient to convict. The trial judge was of the opinion that the verdict returned by the jury was proper, and overruled the motion for a new trial.
 

 Able counsel for defendant contends that the enactment of the Code of Criminal Procedure has changed the former jurisprudence on the subject, and that now this court may consider, in a motion for a new trial, the ground that the verdict is contrary to the law and the evidence.
 

 Counsel cites article 509 of the Code in support of this contention. This article merely provides that “a new trial ought to be granted: 1. Whenever the verdict is contrary to the law and the evidence.”
 

 That this provision refers to new trials applied for before district judges is made patent by article 516 of the Code of Criminal Procedure, which declares that:
 
 “Neither the appellate
 
 nor supervisory jurisdiction of the Supreme Court can be invoked to review the granting or the refusal to grant a new trial
 
 except for error of law.”
 

 Any provision in the Code to the contrary would have been clearly unconstitutional, because in direct conflict with the provision contained in article 7, § 10, of the Constitution of 1921, declaring that: “The appellate jurisdiction of the Supreme Court shall
 
 *522
 
 also extend to criminal cases
 
 on questions of law alone,”
 
 etc.
 

 The conviction and sentence appealed from • are therefore affirmed.
 

 O’NIELL, C. J., dissents from the ruling on bills Nos. 2 to 8, inclusive.
 

 [1]
 

 Ante, p. 69.