*45
 
 McCALEB, Justice.
 

 On the afternoon of December 27, 1955, appellant, a 21 year old Negro farmhand, shot and killed two white men, Jesse Nelson and E. C. Montgomery, at Holly Ridge, a small community located in Madison Parish. Nelson, an elderly man, was the first victim, appellant shooting him in the back ■of the head shortly after 2:00 p.m. with a shotgun he had borrowed from Nelson for the alleged purpose of shooting a
 
 “coon”.
 
 Montgomery was killed with the same gun shortly .after 6:00 p.m. at the general store which he operated. The object of the crimes was robbery, a small amount of change being taken from Nelson’s body by appellant immediately after the shooting (he overlooked a billfold containing $400 in cash) and approximately .$32 in cash and other personal articles being taken by appellant from Montgomery’s store following the shooting of the proprietor. Between 9:00 and 10:00 o’clock on the evening of the crimes, appellant was apprehended by police officers .and, after being questioned he orally confessed. The next day a formal confession was given which was recorded by a stenographer and later transcribed.
 

 In due course, separate indictments were returned against appellant for the murder of his victims. He was brought to trial for the murder of E. C. Montgomery and having been convicted and sentenced to death by electrocution, he prosecuted this appeal relying on ten bills of exceptions for a reversal.
 

 Bill of Exceptions No. 1 was reserved to the rulings of the judge on a hearing involving the present sanity of appellant. After the indictments were returned, counsel were appointed to defend appellant in accordance with law. On April 9, 1956, upon oral motion of these counsel, appellant’s previous plea of not guilty was withdrawn and request was made for a hearing to determine his present sanity as provided by Article 267 of the Code of Criminal Procedure (R.S. 15:267). This request was granted and the judge, on April 18, 1956, appointed a commission, composed of Drs. E. Otis Edgerton, Coroner of Madison Parish, W. R. Morris, a local physician and surgeon and C. E. Sturm, Acting Director of the East Louisiana State Hospital, to inquire into the present sanity of appellant and report its findings within 30 days. On May 8th, the commission met and examined appellant in the Madison Parish Jail and, on the same day, reported to the judge its opinion that appellant was not capable of assisting in his defense and that, his mental deficiency being severe, it would be advisable to send him to the East Louisiana State Hospital for observation and testing for a period not to exceed 30 days. Conformably with the commission’s report, the judge caused appellant to be taken to the East Louisiana State Hospital
 
 *47
 
 for observation and diagnosis and, later, it was reported from the hospital that appellant was suffering from severe mental illness which should have further treatment. When the contents of this communication were made known to the district attorney, he informed the judge that he felt that appellant was misleading the staff of the State Hospital as to his true mental capabilities and he accordingly sent to each of the members of the sanity commission a copy of appellant’s detailed confession in which he names dates, times, places, physical facts and persons, all of which evidence indicated that he possessed greater mental faculties than he displayed to the doctors. Following a consideration by the Commission of appellant’s confession and discussion between the District Attorney (who was convinced that appellant’s placement in the mental hospital was premature), the judge and defense counsel, it was mutually agreed that a hearing was mandatory in view of the provisions of Article 267 of the Code of Criminal Procedure to determine appellant’s present mental condition. This hearing was held on June 30,. 1956, at which time the three doctors composing the commission appeared and gave testimony, all of them reversing their previous findings as to appellant’s present sanity.
 
 [1]
 
 At the conclusion of the testimony-counsel for the defense, faced with the unanimous testimony of the doctors that appellant was presently sane, moved that the sanity commission be discharged and' that a new commission be appointed by the judge to inquire into appellant’s mental condition. This motion was overruled by the judge who, being of the opinion that appellant was fully able to understand the proceedings and to assist in his defense, ordered, over objection of his counsel,, that he stand trial.
 

 In their argument in this court, counsel for appellant complain, among other things, of the reversal by two members of the sanity commission of their previous opinions as to appellant’s present sanity, these reversals being predicated on ap
 
 *49
 
 praisals of the statements made by appellant in his confession, rather than from subsequent personal examinations.
 

 We do not think the judge erred in his ruling on the issue of present insanity. Appellant’s subnormal intelligence, while a factor to be considered, does not in itself support a holding of legal insanity. State v. Chinn, 229 La. 984, 87 So.2d 315 and cases there cited. Indeed, as the law presumes that every man is sane, it should appear by a clear preponderance of evidence “that the accused is so mentally •deficient that he lacks capacity to understand the nature and object of the proceedings against him and to assist in the conducting of his defense in a rational manner”. State v. Riviere, 225 La. 114, 72 So.2d 316, 317. The fact that two of the physicians composing the sanity commission, after considering appellant’s confession, felt that they were mistaken in the impressions they had formed from
 
 a.
 
 previous personal interview with him furnishes no basis for a deduction that appellant is presently insane nor does it place the issue of his sanity in such a state of uncertainty as to warrant a ruling that the judge abused his discretion in not appointing a new commission to reexamine the matter. Accordingly, since there is no evidence to sustain the conclusion that appellant was insane at the time of the trial, we find no merit in Bill of Exceptions No. 1.
 

 On the first day of trial, after some of the members of the venire had been examined on their voir dire, the court recessed for lunch. During this recess the jury box was left by the Clerk unlocked and unattended on a table in the courtroom. Upon reconvening, defense counsel moved to have the petit jury venire quashed on the ground that, since the jury box had been left unlocked and unattended, it could have been tampered with and the names rearranged. When the judge overruled the motion to quash, counsel reserved Bill No. 2.
 

 There is no merit in the bill. The judge states in his per curiam that he delayed ruling on the motion until the venire of 30 names had been exhausted and that the slips on which the names were written were collated and reconciled by him with the list of jurors appearing on the proces verbal of the jury commission. Nevertheless, defense counsel argue that the leaving of the jury box unlocked and unattended was violative of the provisions of Article 182 of the Code of Criminal Procedure (R.S. 15:182) and that this alone was a sufficient irregularity to warrant a mistrial.
 

 Assuming that there was a technical violation of R.S. 15:182, appellant sustained no injury and no substantial right was impaired. Therefore, there is no basis for a reversal of the conviction on this ground. See Article 557 of the Code of Criminal Procedure.
 

 
 *51
 
 Bill No. 3 was reserved when the district attorney, in his opening statement and later in the trial, made reference to the killing of Mr. Nelson which preceded the crime for which appellant was being tried by approximately four hours. Counsel contend that it was highly prejudicial to have it stated, and later have testimony admitted, relative to the killing of Mr. Nelson as appellant was being tried solely for the murder of Mr. Montgomery; that the objectionable matter was not necessary for the purpose of showing motive or system and that the prior killing could not be considered as part of the res gestae because the two crimes took place some four hours apart.
 

 Counsel are mistaken. The trial judge properly concluded “that both killings were part of one and the same transaction and a result of the same motive and intent * *
 
 * ”,
 
 Under our Code of Criminal Procedure and the jurisprudence, evidence of closely related events is receivable for the purpose of establishing motive or intent for the commission of the crime charged. R.S. 15:445, 446; State v. Sears, 217 La. 47, 46 So.2d 34 and State v. Palmer, 227 La. 691, 80 So.2d 374. Furthermore, evidence of the killing of Mr. Nelson was-clearly part of the res gestae. R.S. 15:447, 448.
 
 [2]
 
 The element of time standing alone (four hours in this case) does not determine whether an event or statement is or is not part of the res gestae but, rather, whether the facts and circumstances of the case indicate that one transaction was-an immediate concomitant of the other as to form a continuous chain of events, each having causal connection with the other. It can hardly be doubted that the two killings committed by appellant meet: this test.
 

 Bills Nos. 4, 7 and 8 relate to the admissibility of appellant’s confessions.
 
 [3]
 

 Bill No. 4 is predicated on the failure of the judge to rule the confessions-inadmissible on the ground that defendant lacked the mental capacity to make a free and voluntary confession.
 

 There is no doubt whatever that the State met the requirements of our Constitution (Section 11 of Article 1, LSA
 
 *53
 
 Const.) and Article 451 of the Code of Criminal Procedure (R.S. 15:451) by establishing that appellant’s confessions were freely and voluntarily given and were not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. Therefore, since all members of the sanity commission ■concluded that appellant could appreciate the difference between right and wrong and in view of the finding that he is not presently insane within the meaning of our law, the ground of the objection to the admissibility of the confessions would appear to be insubstantial. Yet, ■counsel insist that, forasmuch as the doctors agreed that appellant’s intelligence quotient was a mere 47 (which places him in the intelligence classification of a six or seven year old child),
 
 [4]
 
 it was not possible for him to exercise discretion and therefore be able to voluntarily confess. In support of this position counsel place much reliance in the testimony given by Dr. C. E. Sturm at the sanity hearing to the effect that a person with an I.Q. as low as 47 is in the “imbecility range”, and that no one can place any credence in his statements as he, like any 6 or 7 year old child, can be too easily led.
 

 Low mentality in itself, as far as we have been able to determine, has never been regarded as a predicate for ruling a confession involuntary. On the contrary, in the only case in our jurisprudence, prior to the instant one, in which this precise point was raised, it was held that low mentality did not render a confession involuntary but that it is a factor to be considered with other circumstances surrounding the giving of the confession in determining whether or not it was voluntary. See State v. Phelps, 138 La. 11,
 
 69
 
 So. 856.
 

 The statement of Dr. Sturm relied on by counsel does not evince that he is of the opinion that appellant was incapable of confessing. Rather he expresses the view that, due to his low intelligence quotient, appellant is easily led and that his statements are not reliable. Thus, while appellant’s ready response to suggestion would directly bear on the voluntariness of his confession, his unreliability is properly addressed to the weight to be given his statements by the jury, a matter which does not come within the sphere of our appellate jurisdiction.
 

 In our independent research on the question of low mentality as affecting the admissibility of a confession, we find but few cases and these are not uniform. However, the ruling of this court in State v. Phelps, supra, appears to be concordant with the general rule stated in Wharton’s Criminal Evidence, 12th Ed., Sec. 386,
 
 *55
 
 page 119, as follows: “The court should look to the circumstances under which the confession is alleged to have been made, and consider the strength or weakness of the accused’s intellect, his knowledge or his ignorance, and whether the declarant had full control of his mental faculties at the time he made the confession, and whether he realized the import of his act”.
 

 Applying this test to the confessions in the case at bar, we are unable to perceive that the judge erred in ruling them voluntary and admissible in evidence.
 
 [5]
 

 After laying the foundation for the admission of appellant’s transcribed and recorded confessions, which contained reference by him to a conviction for theft, the district attorney stated out of the presence of the jury that, although R.S. 15:450 required a confession to be introduced in its entirety, he would, with consent of defense counsel, delete those portions having to do with the prior conviction. Upon refusal of counsel to agree to the suggested deletions, the district attorney offered the confessions in evidence in their entirety but requested the judge to instruct the jury to disregard the portion dealing with the theft conviction. This was done but defense counsel nevertheless objected to the confessions on the ground that they contained references to a prior conviction of appellant and, when overruled, Bill of Exceptions No.
 
 7
 
 was reserved.
 

 Under the circumstances presented,, appellant is in no position to complain. Moreover, to sustain counsel’s contention! would ipso facto render every confession: inadmissible when reference is made therein by the declarant to a prior conviction of an unrelated crime. This is not reasonable-nor is it the law. See State v. Jones, 211. La. 387, 30 So.2d 127, 130.
 

 Bill No. 8 was taken to the overruling of an objection to the introduction, of the recorded confession after the written confession had already been heard' by the jury. It is asserted in this bill that the repetition of the contents of the written confession was designed solely for the purpose of prejudicing the jury against appellant.
 

 There is no basis for counsel’s contention that the confession was offered for the purpose of prejudicing appellant. On the contrary, since appellant was pleading insanity at the time of the commission of the offense, the recorded confession was
 
 *57
 
 highly r el event to aid the jury in its deliberations on this issue and was also of value to the jury in determining the weight to be given to the written confession. Aside from this, since the evidence was admissible, the fact that it was cumulative and prejudicial furnishes no ground for its rejection. State v. Sears, 220 La. 103, 55 So.2d 881.
 

 Bill No. 5 was taken after the judge denied a motion for a mistrial when the state called Mr. Lewis B. Furr, the Clerk of Court, to testify relative to the voluntariness of appellant’s confession. The ground upon which the motion rests is the list of State witnesses furnished apthat Mr. Furr’s name did not appear on pellant nor was his name called when the witnesses were sequestered at the beginning of the trial. Further, it is said that his testimony was highly prejudicial in view of the fact that his brother, Mr. James E. Furr, was serving as a petit juryman in the case.
 

 We find no legal basis for the Bill. Since a copy of appellant’s confession had been furnished defense counsel and Mr. Furr appeared thereon as one of the witnesses, it can hardly be said that they were taken by surprise when Mr. Furr was called to testify in laying the foundation for the admission of the confession. Besides, we know of no law which requires the listing of witnesses who are available to the State without subpoena. State v. Goins, La., 94 So.2d 244.
 

 Bill No. 6 was reserved to the overruling of defense counsel’s objection to the offering in evidence of certain articles taken from the person of appellant at the time of his arrest. These articles consisted of shotgun shells, two purses, “stage money” and $17 in bills and change. The ground of the objection was that the purses did not belong to the deceased and the State’s only purpose in their introduction was to create the impression in the mind of the jury that they had been stolen by appellant. The other articles, it is contended, were irrelevant.
 

 There is no validity in the objection. Most of the items had some relevancy to the case. The shotgun shells were shown to be of the identical color, type and gauge as those taken from Mr. Nelson’s home; the money contained in the purses was shown by the State to be, when computed with that which appellant spent, approximately the same as was taken from Mr. Montgomery’s cash register and in the same denominations. But, apart from this, objections based on the ground of irrelevancy are the weakest known to the law and furnish no basis for a reversal of a conviction, save in exceptional cases-where substantial prejudice is shown. See Article 557 of the Code of -Criminal Procedure. .
 

 
 *59
 
 Bills Nos. 9 and 10 were taken to the overruling of a motion for a new trial and in arrest of judgment. They present nothing for review as the points raised therein are merely a repetition of those presented in the other bills which we have already considered.
 

 The conviction and sentence are affirmed.
 

 [1]
 

 . Dr. Morris and Dr. Edgerton testified that they did not re-examine appellant at any time subsequent to May 8, 195G, the day the commission filed its report concluding that he was mentally incapable of assisting in his defense. Nevertheless, they voiced the opinion at the hearing that appellant was presently sane, stating that an examination of appellant’s detailed confession was instrumental in convincing them that their original opinion was not well founded. They further stated that the report of May 8, 1956, was merely an interim report pending the outcome of the observations of the staff of the East Louisiana State Hospital.
 

 Dr. Sturm’s testimony, while somewhat contradictory as to appellant’s mental capacity, which was primarily due to his low I.Q. (47), and a misconception of the meaning of present insanity, as used in Article 207 of the Code of Criminal Procedure, finally gave the opinion that, tested by the legal standard, appellant was presently sane and capable of assisting in his defense.
 

 [2]
 

 . R.S. 15:447 provides: “Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence.”
 

 R.S. 448 provides: “To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants to it, or form in conjunction with it one continuous transaction.”
 

 [3]
 

 . There was really but one formal confession which was taken by means of questions and answers and later transcribed in typewritten form. However, since this confession was also recorded on an electric recording device and was reproduced before the jury, defense counsel treat it as a separate confession.
 

 [4]
 

 . There is much evidence, however, both medical and lay, that appellant’s mentality is greater than that shown by intelligence tests.
 

 [5]
 

 . Counsel make another contention under Bill No.
 
 4
 
 that the confession was involuntary because it was made by means of questions and answers, indicating that appellant’s answers were suggested by his interrogators. There is no substance in this complaint. R.S. 15:453 specifically provides that a confession may be obtained by means of questions and answers and the evidence shows that the responses of appellant were not induced by the questions propounded to him.