124 So.2d 543

STATE of Louisiana

v.

Freddie EUBANKS.

No. 45199.

Nov. 7, 1960.

Rehearing Denied Dec. 12, 1960.

Max Zelden, Sam Monk Zelden, Frank J. Shea, New Orleans, for appellant.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Richard A. Dowling, Dist. Atty., Joseph R. Bossetta, First Asst. Dist. Atty., Malcolm G. Mundy, Jr., Asst. Dist. Atty., New Orleans, for appellee.

HAWTHORNE, Justice.

Mrs. Mabel Clarkson, about 70 years old, was found dead in her apartment at 731 Iberville Street in New Orleans. Her nude body was on the floor, covered by a mattress, pillows, bed-clothing, rug, and chair. Investigation revealed that she had been struck about the head and body with a piece of iron pipe and an electric fan, and had been stabbed in the chest with an icepick. Freddie Eubanks was indicted and tried for this murder. The State offered evidence to establish that Eubanks entered Mrs. Clarkson's apartment in the early morning with the intention of committing a theft; that Eubanks took some money from Mrs. Clarkson's purse, which was on the dresser, and was searching the room when she awoke; that he struck her with the iron pipe; that Mrs. Clarkson attempted to escape from the room, and that in the ensuing struggle Eubanks tore her pajamas off, struck her with the iron pipe and the electric fan, stabbed her with an icepick, covered her body as described above, and left the room. After Eubanks' arrest he led police officers to the place where he had hidden a watch and other articles stolen from Mrs. Clarkson's room. Eubanks was found guilty as charged and sentenced to

death. He has appealed, relying for reversal on several bills of exception.[1]

Bills of Exception Nos. 1 and 8.

Bills of Exception Nos. 1 and 8 were taken to the admission in evidence over Eubanks' objection of two photographs of the deceased's body. The photograph filed as State Exhibit No. 42 was made at the scene of the crime, and the other, State Exhibit No. 9, was taken at the morgue. It is appellant's contention that these exhibits were gruesome, that they were offered in evidence solely to prejudice the jury, and that they were not in any way necessary or material to the State's case

■ We reiterate here what we have said many times, that the fact that photographs are gruesome and tend to prejudice the jury does not render them inadmissible in evidence if they are otherwise admissible. Scott on Photographic Evidence, Section 661, p. 577, states the rule as follows:

"A photograph of the wounds of the victim of a crime may be prejudicial because of its gruesome appearance, but nevertheless is is admissible when material to some issue in the case and when properly verified; if the rule were otherwise, the more horrible the crime the more hampered would be the prosecution of those who had contributed the details of its horror."

See also State v. Johnson, 198 La. 195, 3 So.2d 556; State v. Solomon, 222 La. 269, 62 So.2d 481.

Although photographs in a criminal case may be gruesome, they are admissible if offered for such purposes as to show the manner of death, and the location, severity, and number of wounds; to establish the corpus delicti of the crime charged; to illustrate any fact, to shed light on any issue, or to describe persons, places, or things involved; to aid in identification; and to confirm the coroner's proces verbal in regard to the description of wounds and the cause of death. 2 Wharton, Criminal Evidence (12th ed.), Sec. 686, V. 2, pp. 654–655; State v. Solomon, supra; State v. Johnson, supra; State v. Ross, 217 La. 837, 47 So.2d 559, 560; State v. Stahl, 236 La. 362, 107 So.2d 670, 675.

In the recent case of State v. Stahl, supra, this court carefully and precisely set out the law on the introduction of gruesome photographs, and quoted at length from State v. Ross, supra, and State v. Solomon, supra, thus:

"In State v. Ross we said [217 La. 837, 47 So.2d 560]:

"'* * * It has long been the jurisprudence of this court that photographs, properly identified, of the body of the deceased in homicide cases are admissible for

---

1. This is the second time this case has been before this court. See State v. Eubanks, 232 La. 289, 94 So.2d 262;

Eubanks v. State of Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991.

the purpose of showing the nature of the crime and the facts and circumstances surrounding its commission, or to assist the witnesses in their testimony and as an aid to the jury in obtaining a better understanding of the character of the wounds. See State v. Messer, 194 La. 238, 193 So. 633; State v. Henry, 197 La. 999, 3 So.2d 104 and State v. Johnson, 198 La. 195, 3 So.2d 556. And the fact that the photographs portray a repulsive spectacle and tend to prejudice the jury furnishes no valid ground for their exclusion where they are otherwise relevant. State v. Johnson, supra; Wharton, Criminal Evidence, 11th Edition, Vol. 2, sec. 773, p. 1321; Scott, Photographic Evidence, sec. 661, pps. 570–580.'

"In State v. Solomon, supra [222 La. 269, 62 So.2d 484], it was stated:

" 'But, aside from this, the photograph was clearly admissible for identification purposes, and also in corroboration of the Coroner's procès verbal with reference to the description of the wounds and the cause of death. Albeit, we reiterate our adherence to the views succinctly expressed in State v. Johnson, 198 La. 195, 3 So.2d 556, that, where the photographs are admissible, the fact that they are so gruesome that they tend to prejudice the jury is not a valid reason for rejecting them in evidence. State v. Morgan is to be regarded as—indeed it is—a case of most unusual circumstances.' "

Appellant in the instant case relies on State v. Morgan, 211 La. 572, 30 So.2d 434; but in the light of the jurisprudence which we have discussed at length, we shall not comment on the Morgan case.

■ The trial judge in the case at bar informs us in his per curiam that these photographs were offered by the State to show the body of the deceased, the position of the wounds, etc. Moreover, it is clear that they were admissible in corroboration of the coroner's proces verbal as to the nature and description of the wounds and the cause of death.

■ Appellant further argues that State Exhibit No. 9, the picture taken at the morgue, is inadmissible because an autopsy had been performed on the body before the picture was made. The record does not support this allegation. Although there is some uncertainty as to the exact hour when the picture was made, both the photographer of the coroner's office and the coroner himself testified positively that it was taken before the autopsy was performed.

■ Appellant also contends that State Exhibit No. 9 was inadmissible because no predicate was laid for its admission and it was not properly identified. In this connection he points to the official photographer's statement that he took the photograph so that the "bullet wound" in the body would show. An examination of the photograph

makes it perfectly apparent that the photographer was referring to the stab wound made by an icepick. Moreover, the State did not contend that the victim died from a gunshot wound or even that she had been shot. We fail to see how this mistaken and isolated voluntary reference to a bullet wound could have prejudiced the accused. As we view the matter, the objection goes more to the weight to be given to the testimony than to the admissibility of the photograph. In addition, a witness who had known the deceased well for several years positively identified the picture as a photograph of the body of Mrs. Clarkson, whom the accused was charged with murdering.

### Bill of Exception No. 2.

■ During the trial of the case the State called Joseph Oliver as a witness. On cross-examination counsel for the defense sought, for the purpose of impeaching Oliver's testimony, to question him regarding his testimony at a prior trial of the accused for this crime, and for this purpose counsel sought to use his testimony given at that trial. The district attorney objected to the use of this witness' testimony as taken by the official stenographer at the earlier trial, and upon his objection the trial judge ruled that the defense must introduce the entire record of that trial before it could use Oliver's prior testimony. Counsel for the defense objected to this ruling and reserved Bill of Exception No. 2. Pursuant to the ruling of the court the entire record of the former trial was offered, and defense counsel used the testimony there contained in cross-examination of Oliver and several other state witnesses as to statements made by them at that trial.

The trial judge in his per curiam informs us that the jury was never told except by counsel for the defense that there had been a former trial. The judge further states that no reference was made to the former trial except in connection with defense counsel's examination of state witnesses, that the jury never saw the written record of the first trial, and that no reference was made to the verdict returned at that time.

We have some doubt of the correctness of the judge's ruling, but we need not decide whether it was erroneous because, as shown by the judge's per curiam, the accused was not prejudiced by the ruling. Counsel for the accused were not deprived of the use of the record, and were not hampered or hindered in their use of it to cross-examine state witnesses regarding their testimony on the former trial.

### Bill of Exception No. 3.

■ A bloody palm print was found by investigating officers on a washbasin in the deceased's room, and during the trial the State offered in evidence a photograph of this palm print, identified as State Exhibit

No. 13 and filed while a fingerprint expert was testifying for the State. This bill of exception shows that at the time the picture was offered in evidence, the attorney for the defense objected but stated no reason for his objection.

■ The law is well settled that a bill of exception must state the grounds of objection and point out specifically the errors complained of. In other words, the bill must show not only the objection but the grounds of objection, so as to afford the trial judge an opportunity to rule intelligently on the admissibility of testimony or offerings objected to, and an opportunity to correct any error that he may have committed. Moreover, it is important that the basis of the objection should clearly appear in the bill because the appellate court cannot possibly be expected to study all the law of evidence in an effort to discover some possible ground why the objection is meritorious. Where the bill is not sufficiently specific or does not state the ground of the objection, it will not afterwards avail an appellant raising it. State v. Green, 36 La.Ann. 185; State v. Lanning, 134 La. 209, 63 So. 878; State v. Carroll, 160 La. 199, 106 So. 782; State v. Keife, 165 La. 47, 115 So. 363; State v. Ricks, 170 La. 507, 128 So. 293; State v. Antoine, 189 La. 619, 180 So. 465.

Under the jurisprudence, therefore, we are not called upon to consider this bill.

We have done so here because this is a capital case, but it must not be inferred that we will consider such bills in the future even in cases of this kind.

It appears, from the brief and the argument before this court, that counsel are contending that the expert who identified the palm print as that of the defendant said that he had made a mistake; and in an attempt to prove this contention counsel quote an extract from the expert's testimony. The record does not support counsel in this contention. When the quoted statement is considered in connection with all the rest of the witness' testimony, it is obvious that it cannot be construed as an admission that he had made an error in his identification of the palm print. His testimony as to identification is positive: "Q. Your general characteristics taken from the print that you took off of the bowl in that room and the general characteristics taken from this man Eubanks from your opinion as an expert are the same; is that correct? A. That is correct."

Bill of Exception No. 5.

■ This bill was taken to the overruling of defense counsel's objection to the offering in evidence of a confession of the accused which had been reduced to writing. The objection is that "the defendant could neither read nor write nor was capable of knowing what he signed if he signed or

said anything." It is not seriously contended here that in offering this confession the State did not meet the requirements of our Constitution and Code of Criminal Procedure by establishing that the confession was freely and voluntarily given and was not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises.

The trial judge in his per curiam tells us that from his observation of the defendant during the trial, and particularly of his responses to questions put to him while he was on the witness stand, he was satisfied that the accused was able to intelligently answer the questions asked of him by the police officers at the time of the confessions and was able to clearly understand his statement when it was read back to him.

▬ Counsel for the appellant now argue that the accused did not have the mental capacity to make such a confession, that he did not know the difference between right and wrong at the time it was made, and that he is ignorant, is an imbecile, and did not realize the import of his action. In other words, counsel now argue that at the time the confession was given, the accused was insane. We do not think the record supports this contention. Even if we concede, however, that the evidence tends to show that the accused was of a low mentality and possibly feeble-minded, such mental deficiency would not of itself render the con-

fession inadmissible but rather is a matter that bears on the weight, credibility, and effect to be given to the confession by the jury. The same question was before us in the recent case of State v. Stewart, 238 La. 1036, 117 So.2d 583, 587, decided January 11, 1960, in which we said:

"* * * Evidence tending to show his [the accused's] weak mentality, feeblemindedness, and mental stress does not affect the admissibility of the confessions, but rather is a matter that bears on the weight, credibility, and effect to be given the confessions by the jury. See 2 Wharton's Criminal Evidence 119–121, sec. 386 (12th ed. 1955); 20 Am.Jur. 448–449, Evidence, secs. 523, 524; 22 C.J.S. Criminal Law § 828, pp. 1451–1452; State v. Phelps, 138 La. 11, 69 So. 856." See also State v. Bailey, 233 La. 40, 96 So.2d 34, 69 A.L.R.2d 340.

### Bill of Exception No. 6.

After arrest defendant made an oral confession which was subsequently reduced to writing, and both the oral and the written confessions were offered in evidence in the case. In brief counsel concede that a predicate was properly laid for the introduction of the oral confession and the subsequent written confession made at the homicide office to the police officers. During the officers' investigation of the crime the accused was taken to a locker room of the restaurant where he was employed at the

time the crime was committed, and there he pointed out a place where he had hidden certain articles, including a watch, stolen from the deceased. It is counsel's contention that this act of the accused was a separate and distinct inculpatory statement or confession for which no predicate was laid.[2] As we understand this argument, it is counsel's contention that the proper predicate was not laid because the district attorney failed to cover this act in his opening statement, or that the State did not meet the constitutional requirement of establishing that this inculpatory action of the defendant was his free and voluntary act.

In State v. Sanford, 218 La. 38, 48 So.2d 272, 275, the district attorney in his opening statement said that he would introduce in evidence the verbal confession of the accused made to certain officers about the crime and how the accused committed it. Counsel for the defendant contended in that case that the district attorney should have stated the contents of the confession. In disposing of this contention we said that "the district attorney is not required to either read the confession to the jury or to detail the substance thereof", but is required under Article 333 of the Code of Criminal Procedure to explain "the nature of the charge and the evidence by which he expects to establish the same". In sup-

port of this statement we cited State v. Smith, 212 La. 863, 33 So.2d 664, and State v. Poe, 214 La. 606, 38 So.2d 359.

In State v. Stahl, 236 La. 362, 107 So.2d 670, 672, we said:

"Article 333 of the Code of Criminal Procedure requires the district attorney to make an opening statement, in which he must explain the nature of the charge and the evidence by which he expects to prove the same. In interpreting this article this court has on numerous occasions said that the article does not mean that the district attorney must give the names of his witnesses and go into minute detail as to every shred of evidence he intends to offer on the trial, but that it is sufficient if he explains the nature of the charge and the purport of the evidence by which he expects to establish the same. * * *"

In the Stahl case in a footnote we were careful to point out that the district attorney in explaining the nature of the evidence must mention admissions or confessions and evidence of this nature if he intends to use them.

■ The opening statement of the district attorney in the instant case is attached to and made part of the bill. After stating that the accused made a full and complete voluntary oral confession, which was sub-

---

**2.** Photographs were made of the accused pointing to the place where he had hidden these articles and handing one of the police officers a watch, and both photographs were admitted in evidence without objection (State Exhibits Nos. 5 and 7).

sequently reduced to writing, the district attorney said:

"Now in addition to laying out the story of the murder, so to speak, in this confession, the defendant further admitted stealing the victim's watch and keys and hiding them in the dressing room at La Louisiane * * *. Eubanks then voluntarily returned to La Louisiane accompanied by police officers, where he showed them where he had hidden the keys and the watch. At that time the watch was located; however the keys for some reason had disappeared, and until this day remain unfound."

Merely to quote the above is to demonstrate beyond question that the opening statement of the district attorney met the requirements of Article 333 of the Code of Criminal Procedure in regard to covering the accused's inculpatory act.

 Let us now discuss the contention that the act of the defendant constituted a separate and distinct inculpatory statement or confession which was inadmissible because the State had not shown it to be free and voluntary as required by the Constitution. We cannot agree with counsel that the act of the accused was a separate and distinct confession; as we view the matter, it was part of the oral confession itself, which counsel conceded, as they must, was given freely and voluntarily by the accused.

In making this oral statement the accused said in the homicide office that he would take the officers to the place where he had hidden the deceased's watch and keys so that these articles might be recovered. The officers then took the accused to the place which he designated, and there the photograph was made of him pointing to the spot where the watch and the keys were supposed to be.

The trial judge tells us that it was his distinct impression that all of the events of that evening constituted one continuing transaction or running narrative by Eubanks; that the Eubanks statement was taken by the police officers, in the main, at the homicide office, at La Louisiane Restaurant, and en route between the homicide office and the restaurant, and that he could not agree with counsel for the defense that more than one confession was involved.

The record fully supports the trial judge in this statement, and the act of the accused in pointing out where he had hidden the stolen articles was a part of his confession, for the admission of which a predicate had been laid.

In support of this bill counsel rely on State v. Johnson, 229 La. 476, 86 So.2d 108. In that case the court was considering two confessions "made at widely separated times and places and under entirely different circumstances", which were therefore separate and independent confessions. In the instant case we are dealing only with the oral confession of the accused, of which

his revelation of the hiding place of the stolen articles was a part. Consequently the Johnson case is not pertinent or applicable here.

Bill of Exception No. 10.

■ In considering this bill we must first point out that counsel for the accused timely requested the judge to deliver his charge to the jury in writing, pursuant to R.S. 15:389.

During the progress of the trial the defense called as a witness Dr. Richard Long, a psychiatrist. While he was being questioned by the attorney for the defense, he was given a so-called hypothetical case very similar factually to this case. He was then asked whether a person acting in such a manner would be acting under an irresistible impulse at that time. The question was objected to by the district attorney, who stated that "The Law of Louisiana says that there is no such—". At that point defense counsel interrupted and objected to the district attorney's stating the law. Thereupon the judge said that he would instruct the jury when the proper time arrived thoroughly and adequately on the subject of insanity in Louisiana, and that at the present time they were not going into any questions or arguments on the subject. The court then asked the doctor whether he knew the law in Louisiana in respect to the test of sanity or insanity. The witness replied that he knew it generally. The court asked the witness whether he knew that "it boils itself down to what is known as McNaughton's Rule", that is, whether or not a person knows the difference between right and wrong, and that there is a difference between legal insanity and medical insanity. At this point counsel for the accused stated that the judge's remarks to the witness were probably objectionable as constituting an oral charge to the jury on the law. Counsel moved for a mistrial, which was denied, and Bill of Exception No. 10 was reserved.

■ The provision of R.S. 15:389 that the judge when so requested must give his charge to the jury in writing is mandatory, and the refusal of the judge to comply with this statute and give a written charge when so requested is fatal to the verdict. State v. Rini, 151 La. 163, 91 So. 664; State v. Wilson, 169 La. 684, 125 So. 854; State v. Cavanah, 233 La. 565, 97 So.2d 396. The question thus presented is whether the judge's remarks during the examination of Dr. Long can be considered a part of his charge to the jury as the term "charge" is used in R.S. 15:389.

■ In support of this bill counsel rely on the recent case of State v. Cavanah, supra. In that case counsel for the defendant timely requested the judge to deliver his charge in writing. In Cavanah, both the State and the defense rested, and counsel for both the State and the defense made their arguments to the jury. Defense coun-

sel in his closing address to the jury urged the jury not to consign the defendant to prison. In consequence of that statement, the judge, before delivering his written charge, orally told the jury that the jury's function was to determine the guilt or innocence of the accused, and that it should not be concerned with the penalty which the court might impose in the event of a verdict of guilty. To these oral remarks counsel for defendant objected and reserved a bill, the basis of which was that the entire charge as given by the judge was not in writing, and hence that the court violated the provision of R.S. 15:389. On original hearing this court held that the oral statements of the trial judge were not part of his charge and therefore did not have to be given in writing. On rehearing this court accepted the common-law definition of "charge". According to this definition, a charge, being regarded as synonymous with instructions, is, among other things, a *final address* made by the judge to the jury trying a case before they arrive at a verdict, in which he instructs the jury as to the rules of law which apply to the various issues which they must observe in deciding on their verdict when they have determined the controverted matters of fact; the address made by the judge *after the case has been closed* when he instructs the jury in any matter of law arising on it; *any and all final instructions addressed by the court to the jury* for the purpose of governing their

action in arriving at a decision. This court concluded that the remarks of the trial judge were a charge under the accepted definition of that term, and that the judge had committed reversible error by not giving the charge wholly in writing.

In the instant case the remarks of the trial judge, which were provoked by argument between counsel as to what the law of Louisiana is on insanity, were made to a witness during the course of the trial, before the State and the defense had rested their case, and before the final arguments to the jury, and in no sense can these remarks be construed as a charge under the accepted definition of that term. There is therefore no merit in the complaint that these remarks were not given in writing.

Under the defense's theory of this bill, any remark as to the law which the trial judge might make during the trial and before the time for him to deliver his formal charge to the jury, whether made to a juror on voir dire examination, to counsel, or to a witness, would have to be in writing.

### Bill of Exception No. 12.

This bill was taken to the overruling of defendant's motion for a new trial. Counsel's principal allegation in support of this motion is that all the psychiatric testimony adduced during the trial of the case on its merits indicated without any doubt that the defendant had a mental age of four

and a half years, was an imbecile, and therefore was incapable of distinguishing between right and wrong and unable to assist counsel in his defense.

In May, 1959, counsel filed a motion alleging that the accused was presently insane and insane at the time of the commission of the crime, and requesting the court to appoint a lunacy commission. The commission was appointed and in due course rendered its report finding the accused presently sane and able to distinguish right from wrong. A hearing was had, and in June, 1959, the court found Eubanks to be presently sane. Upon arraignment Eubanks pleaded not guilty by reason of insanity. The trial of the case was begun in September, 1959. At the trial on the merits the principal defense was insanity at the time of the commission of the crime, and the accused adduced expert testimony in an effort to sustain this defense. The jury rejected this defense and returned a verdict of guilty as charged on September 25, 1959.

The substance of the motion, as we understand it, is that the evidence adduced during the trial on its merits discloses that the defendant at that time was insane, or, stated somewhat differently, that the accused at the time of the trial was insane and unable to assist counsel in his defense. In other words, counsel in this motion for a new trial appear to be pleading insanity at the time of the trial.

■■■■ Under the law of this state every accused is presumed to be sane, and the burden is on him to establish by a clear preponderance of the evidence that he is so mentally deficient that he lacks capacity to understand the nature and object of the proceedings against him and to assist in conducting of his defense in a rational manner. State v. Bailey, 233 La. 40, 96 So.2d 34, 69 A.L.R.2d 340; State v. Riviere, 225 La. 114, 72 So.2d 316, and authorities there cited.

The record discloses that Eubanks testified in this case in his own behalf, and the trial judge tells us in his per curiam:

" * * * My own impression was that the defendant was an illiterate negro of the average intelligence of such a person. I believe that he was fully capable of distinguishing between right and wrong, appreciating the natural consequences of his acts and was able to assist his counsel in preparing and presenting his defense. As Your Honors have said in State v. Chinn [229 La. 984] 87 So.2d 315 at Page 320:

" 'However, according to the universally accepted jurisprudence, mere weakness of mentality or subnormal intelligence does not, of itself, constitute legal insanity.' "

After reading the testimony adduced both by the State and by the defense on the subject of defendant's mentality, we are in full accord with the finding of the trial judge

and are convinced that the accused has not overcome the presumption of sanity at the time of the trial by a preponderance of the evidence.

 Although it may be a strained construction, certain language used by counsel in this motion may possibly be construed to mean that we should also review the question of whether the accused was insane at the time of the commission of the crime. The insanity of an accused at the time of the commission of an offense is a question of *fact* affecting the guilt or innocence of the accused, and necessarily it must be tried on the merits and submitted to the jury like all other facts presented during the trial of the case. State v. Jenkins, 236 La. 256, 107 So.2d 632; State v. Chinn, 229 La. 984, 1002, 87 So.2d 315, and authorities there cited; State v. Swails, 226 La. 441, 76 So.2d 523. Under Article 7, Section 10, of the Constitution this court is without appellate jurisdiction to review the facts in a criminal case. See State v. Jenkins, supra.

In this motion counsel allege other reasons why a new trial should be granted. Some of these allegations we have already discussed in connection with previous bills of exception, and the others were not briefed or argued in this court. In any event, our review of these allegations discloses that they are without merit.

There are other bills of exception in this record which have been neither briefed nor argued in this court and thus presumably have been abandoned. We have reviewed these bills, however, and find them without merit.

The conviction and sentence are affirmed.

124 So.2d 553