ROGERS, Justice.
 

 Eugene Johnson was indicted jointly with Ashton Heard for the murder of Steve Bench at Albany, Louisiana, on November 23, 1940. A severance was granted Ashton Heard, and Eugene Johnson was tried, found guilty as charged, and sentenced to be hanged. He has appealed, relying on three bills of exception taken to the rulings of the trial judge.
 

 Bill No. 1. This bill was reserved to the ruling of the trial judge in permitting the assistant district attorney in his opening statement to the jury, over defendant’s objection, to give certain details of a written
 
 *200
 
 confession, made in the office of the district attorney of the Parish of East Baton Rouge, in the presence of the arresting and other law enforcement officers. It is defendant’s contention that the assistant district attorney should not have given to the jury the particulars of defendant’s confession before it was admitted in evidence. Defendant’s complaint is not well founded.
 

 [1] According to Article 333 of the Code of Criminal Procedure, the district attorney, in his opening statement to the jury, must explain not only the nature of the charge against the defendant, but also the evidence by which he expects to establish the charge. When the evidence, or a part of the evidence, by which the district attorney intends to prove the charge against the defendant is a confession made by the defendant, the district attorney must so inform the judge and the jury in his opening statement. State v. Garrity, 178 La. 541, 152 So. 77.
 

 [2] The record discloses that the trial judge explained to the jury that the law required the district attorney to make such a statement in opening the case, but that the statement was not to be considered as evidence in the case but merely as a statement of what the State expected to prove.
 

 Defendant’s complaint might be well founded if the defendant’s confession, when offered by the prosecution, had been excluded by the trial judge, but the confession, when offered, was properly admitted; hence, defendant’s case was not prejudiced by the statement of the assistant district attorney. State v. Cannon, 184 La. 514, 166 So. 485.
 

 [3] Bill No. 2. This bill was reserved to the ruling of the trial judge in admitting in evidence the written confession of the defendant. It is contended by defendant that the confession was not free and voluntary and that it was therefore improperly permitted to
 
 go
 
 before the jury.
 

 The note of evidence attached to and made part of the bill of exception shows that the defendant’s statement or confession was made in the office of the district attorney, of the Parish of East Baton Rouge, in the presence of Bryon Clemons, special investigator for the District Attorney of that Parish; Frank M. Edwards, Sheriff of the Parish of Tangipahoa; P. R. Erwin, Sheriff of the Parish of Livingston, where the homicide occurred; C. R. Sullivan and L. P. Easterly, deputy sheriffs of the Parish of Livingston; and Bolivar E. Kemp, Jr., district-attorney for the Twenty-first Judicial District. All these witnesses testified that no threats were made against defendant, nor was any violence used against him, nor was there any inducement of any kind offered him to obtain the statement or confession, but that defendant’s statement was freely and voluntarily made. We do not find any contradictory testimony in the record. Counsel for defendant appear to rely wholly on the circumstances surrounding defendant’s arrest in Houston, Texas, and his transportation to the City of Baton Rouge which it is contended were sufficient to bring about such a state of fear in defendant as to vitiate his confession as evidence.
 

 The facts disclose that Steve Bench, the deceased, lived alone in a small house at
 
 *202
 
 Albany, Louisiana. During his lifetime he acquired a considerable amount of money and other property which he kept in his home. On the morning of November 23, 1940, he was found by a neighbor, lying on the floor of his home, beaten to death. The deceased had been robbed and the house ransacked throughout. A hundred dollar bill was found lying on the floor, and $2500 in postal savings certificates were found in a stove on the premises. A subsequent investigation revealed that the deceased had been robbed of several thousand dollars in currency of large denominations.
 

 The defendant, Eugene Johnson, and one Eddie Garrett, another negro, were suspected as two of the assailants of the deceased. A posse was immediately organized by the peace officers of the Parishes of Tangipahoa and Livingston for the purpose of apprehending Johnson and Garrett, who had escaped to the woods. Later during the day Eddie Garrett was shot and killed by a peace officer, and the sum of $2,400 of the money stolen from the deceased was recovered by the police as the money was dropped by Garrett in his flight. Johnson managed to elude the police and make good his escape. He went to 801 Adams Street in the City of New Orleans, where he met one Ashton Heard, a third assailant of the deceased. They bought a Dodge car and two days later drove to Houston, Texas, together with three other negroes.
 

 Johnson was arrested in Houston, Texas, on the morning of January 18, 1941. The arrest was made by P. R. Erwin, Sheriff of Livingston Parish, assisted by two of his deputies, Carter Rownd, an attorney at law, and three policemen of the City of Houston. When asked by the arresting officer where his partner, Ashton Heard, was defendant stated he was at a certain “juke” or night club. The officers then went to the place indicated and arrested Heard. They left Houston with their prisoners between 6 and
 
 7
 
 o’clock in the morning and reached the City of Baton Rouge about 3 o’clock in the afternoon where they placed the prisoners in jail. The defendant’s confession was made the same evening, between 5 and 6 o’clock.
 

 The defendant, Ashton Heard, and_ one Cornelius Mitchell were handcuffed together during the automobile trip from Houston to Baton Rouge, and all the officers, who accompanied him, were armed.
 

 The evidence shows that the negroes slept a portion of the time during the trip and also were furnished with food. They talked with the officers about the commission of the crime, but no threats were made, nor inducements offered to compel them to do so. Sheriff Erwin of Livingston Parish testified that he recovered a watch from Johnson, which Johnson stated he had taken off a nail in Mr. Bench’s house.
 

 The surroundings and conditions to which we have referred were not sufficient to bring about such a state of fear as compelled the defendant to make the .confession. The uncontradicted testimony in the case shows that at the time the defendant made his confession, he did not appear to
 
 *204
 
 be frightened in the least. We therefore conclude that the trial judge correctly overruled defendant’s objection to the admission of his confession. See State v. White, 156 La. 770, 101 So. 136.
 

 Bill No. 3. This bill was reserved to the ruling of the trial judge in admitting in evidence six photographs of the deceased and the interior and exterior of his home. The photographs were offered in evidence in connection with the testimony of Dr. V. G. Gautreaux, deputy coroner. Defendant objected to the photographs of the home of the deceased on the ground that the home could be viewed by the jury if they so desired and that such view constituted the best evidence, and further that the deputy coroner could describe the wounds of the deceased from which he died to the satisfaction of the jury and that the admission of the photographs in evidence would tend to create a feeling of horror in the minds of the jurors, which would be highly prejudicial to the defendant.
 

 The photographs were made by an expert photographer shortly after the body of the deceased was found and before it was moved or touched by any person. The photographs were properly identified and their admission was permitted by the trial judge for the purpose of showing the nature of the crime and the facts and circumstances surrounding its commission.
 

 In State v. Messer, 194 La. 238, 193 So. 633, this Court sanctioned the admission in evidence in a murder trial of photographs of the deceased, made by an expert photographer shortly after the body was found and before it was moved or touched by any one, to prove the corpus delicti, to assist witnesses in their' testimony, and to assist the jury in obtaining a better understanding of the nature of the wounds of the deceased. The ruling in the Messer case was reaffirmed in the recent case of State v. Henry, 3 So.2d 104, where this Court approved a ruling of the trial judge permitting the introduction in evidence of photographs of the body of the deceased where it lay on the ground near a haystack in a pasture, for the purpose of showing the position of the body, the scene of the crime, and the place of the penetration of the bullet.
 

 The principle of admitting this kind of evidence (photographs) is but a corollary to that permitting the introduction of the physical object itself. Stated as a general rule, the proposition is that photographs are admissible in evidence when they are shown to have been accurately taken, to be a correct representation of the subject in controversy, and where they tend to illustrate any material fact in the case, or to shed light upon the transaction before the court. Wharton’s Criminal Evidence, 11th Ed., Vol. 2, sec. 773, p. 1317.
 

 Where they are otherwise properly admitted, it is not a valid objection to the admissibility of photographs that they tend to prejudice the jury. Competent and material evidence should not be excluded merely because it may have a tendency to cause an influence beyond the strict limits / for which it is admissible. Wharton, Crim
 
 *206
 
 inal Evidence, 11th Ed., Vol. 2, sec. 773, p. 1321.
 

 The admission’ of photographs and the use to be made of them on the trial must necessarily rest largely within the discretion of the trial judge, who can determine whether they serve a proper purpose in the jury’s enlightment. Wharton, Criminal Evidence, 11th Ed., Vol. 2, sec. 773, p. 1323. Photographs, whether original or copies, are admissible as primary evidence upon the same grounds and for the same purposes as are diagrams, maps and drawings of objects or places. Generally, photographs which go to illustrate any fact or shed light on an issue, or are relevant to describe person, place or thing involved, are admissible. They may be used by witnesses in explaining their testimony, and in illustrating hypothetical situations. Admission and use of photographs are much within the discretion of the court, and it is proper practice for the judge to hear preliminary evidence on the matter. Photographs have been received for the purpose of describing and identifying premises which were the scene of a crime, and they need not show all the premises if they show the material part. Underhill’s Criminal Evidence, 4th Ed., sec. 117, pp. 157 and 158.
 

 The trial judge did not abuse his discretion in admitting the six photographs of the deceased and of the premises which were the scene of the crime.
 

 For the reasons assigned, the conviction and sentence appealed from are affirmed.
 

 FOURNET, J., absent.