107 So.2d 670

**STATE of Louisiana**

v.

**Alfred STAHL.**

**No. 44158.**

Dec. 15, 1958.

Rehearing Denied Jan. 12, 1959.

Sam J. D'Amico, Baton Rouge, Leon A. Picou, Jr., John R. Rarick, St. Francisville, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Richard Kilbourne, Dist. Atty., Clinton, for appellee.

HAWTHORNE, Justice.

Alfred Stahl, an inmate of the Louisiana State Penitentiary, was charged in a bill of indictment with the murder of another inmate. He was tried, found guilty as charged without capital punishment, and sentenced to imprisonment for life. He prosecutes this appeal relying on numerous bills of exception for reversal of the conviction. In brief filed in this court counsel for appellant have grouped the bills of exception, and we shall consider them in the manner in which they are presented.

Bills Nos. 1, 4, 5, and 14 were taken in connection with certain questions propounded to the coroner, the offering of his procès verbal for the purpose of showing death and the cause thereof, and a question asked an inmate of the penitentiary about what he saw the defendant do on the day before the crime. Objections were made to these questions and the offering as not being covered by the district attorney in his opening statement, and the objections were overruled.

■ Article 333 of the Code of Criminal Procedure requires the district attorney to make an opening statement, in which he must explain the nature of the charge and the evidence by which he expects to prove the same. In interpreting this article this court has on numerous occasions said that the article does not mean that the district attorney must give the names of his witnesses and go into minute detail as to every shred of evidence he intends to offer on the trial, but that it is sufficient if he explains the nature of the charge and the purport of the evidence by which he expects to establish the same.[1] State v. Winey, 216 La. 560, 44 So.2d 115; State v. Pearson, 224 La. 393, 69 So.2d 512; State v. Paternostro, 225 La. 369, 73 So.2d 177; State v. Jones, 230 La. 356, 88 So.2d 655.

■ In the instant case the opening statement of the district attorney is attached to one of the bills. It shows that he stated, among other things, that this accused had obtained a meat cleaver which he had previously taken into the dormitory where the murder was committed, and had hacked to death the deceased named in the bill of indictment and another person; that both of these men had had their brains practically beaten out. He also fully explained the charge against the defendant, a charge of murder, and informed the jury of the name of the person whom the defendant was accused of murdering. Under these circumstances it is clear that all the evidence to which objections were made had been adequately covered by the opening statement.

■ While the sheriff of West Feliciana Parish was testifying for the State, the

1. Of course the district attorney in explaining the nature of the evidence must mention admissions or confessions and evidence of this nature if he intends to use them.

 attorney asked him: "Will you state whether or not Stahl [the accused] was given a lie detector test?" Objection was made to this evidence as being irrelevant and immaterial. The district attorney then stated he would withdraw the question if any objection was made, and so far as the record shows, it was never answered. Counsel for the defendant excepted to the question and the remark of the district attorney, and moved for a mistrial. The court sustained the objection but overruled the motion for a mistrial, and Bill No. 6 was reserved.

We think the trial judge was correct in sustaining the objection to the question. Counsel contend, however, that at that time they were entitled to an order of mistrial for the reason that it was the intent of the district attorney to call the attention of the jury to the fact that the defendant Stahl was not testifying in his own behalf; in other words, that the district attorney was commenting on the failure of the accused to take the stand.

 Under the well-settled jurisprudence of this court, it is reversible error for the district attorney to call to the attention of the jury, either by direct statement or by plain inference, the fact that the defendant has not testified. See State v. Antoine, 189 La. 619, 180 So. 465; State v. Bentley,

219 La. 893, 54 So.2d 137, and numerous authorities there cited. And where such a comment is made, the verdict of the jury will be set aside even though the judge instructs the jury to dismiss the comment from their minds and not to permit themselves to be influenced by it. State v. Richardson, 175 La. 823, 144 So. 587.[2]

In the instant case the question is obviously not a direct comment on the defendant's failure to take the stand, and cannot possibly be construed as even an indirect reference to this fact.

Appellant may take some comfort from the decision in the case of State v. Hoover, 219 La. 872, 54 So.2d 130, 131. In that case the assistant district attorney in his closing argument called the attention of the jury to defendant's demeanor in the courtroom when he had observed certain photographs of the scene of the homicide, and stated that from defendant's manner it was plain that he was familiar with the actual scene rather than with the photographs. In the course of that opinion the statement was made that "The implication of the Assistant District Attorney * * * infringed defendant's constitutional privilege against circumstantially forced self-incrimination, which the defendant had to cure, if he so desired, by the waiving of his constitutional right not to take ιthe stand

2. See, however, my concurring opinion in State v. Bentley, 219 La. 908, 54 So.2d 142, and my dissenting opinion in State v. Hoover, 219 La. 882, 54 So.2d 133, in both of which I stated my reasons for not agreeing with this jurisprudence.

\* \* \* ". We cite this case because appellant contends that the effect of the question propounded in the instant case could only have been cured by the accused's waiving his privilege, taking the stand, and testifying that no lie detector test was undergone. Only four justices of this court signed the Hoover opinion, however, and one of these in dissenting from the refusal to grant a rehearing stated that he was convinced that the remarks complained of did not constitute a comment on the accused's failure to take the witness stand as they made reference neither directly nor indirectly to the fact that the defendant had not testified. Two of the justices concurred, one stating that he concurred in the decree but was not in accord with the ruling that the remarks complained of constituted a comment upon the defendant's failure to testify. The writer of the present opinion dissented from the holding in the Hoover case. Thus it is apparent that the rationale of that opinion did not represent a majority view of the members of this court, and the Hoover case does not therefore afford a basis for reversing the instant case.

■ Bill No. 15 was reserved in connection with matters that arose in the judge's office during a recess of the court, of which there is no record except a discussion between the judge, the district attorney, and counsel for the defendant which occurred after they had returned to the courtroom but during the absence of the jury.

The witnesses had been sequestered or placed under the rule. Many of the witnesses in this case were inmates of the penitentiary and prison officers and guards. The warden of the penitentiary had warned the trial judge of the dangerous propensities of certain of these inmates and advised that the prison officers and guards should be in the courtroom at the time these particular convicts were to testify. A discussion of this matter was held in the judge's chambers. Permission was sought of defense counsel to permit two of the State's witnesses, police officers and guards at the penitentiary, to be present in the courtroom during the testimony of defendant's convict witnesses, and on this point a heated argument ensued. The court excused the two officer-witnesses in question from the rule, and they were permitted in the courtroom. Counsel here argue, among other things, that the accused was deprived of keeping State's witnesses under the rule, and that the accused was not present at the discussion held in the judge's office.

Since no part of these incidents occurred in the presence of the jury, we fail to see how the defendant was prejudiced. Moreover, the trial judge in his per curiam informs us that although the two police officers were allowed to return to the courtroom, neither was afterwards called as a witness by the State.

Bills Nos. 20 and 21 were reserved because of certain remarks made by the district attorney in his closing argument. These statements are given in the bills out of context, and it is not clear to us exactly what matters the district attorney was discussing. Some of the remarks are about other crimes published in newspapers, and others deal with the motive for the homicide for which defendant was being tried. On the face of the bills these remarks appear highly improper.

The trial judge in his per curiams, however, tells us that the argument appeared to him perfectly proper under the circumstances and fully justified by the record, and was made in retaliation by the district attorney to the blistering attack made upon him and the State's main witness by defense counsel in their arguments to the jury. Furthermore, the judge states that he gave defense counsel wide latitude in their argument, that they, too, had referred to newspaper stories, and that under the circumstances he felt that he was justified in giving the district attorney some latitude in his argument.

■ Under Article 381 of the Code of Criminal Procedure counsel are permitted to argue both the law and the evidence but must confine themselves to matters as to which evidence has been adduced or of which judicial cognizance is taken and to the law applicable to the evidence.

However, as said in State v. Brown, 214 La. 18, 36 So.2d 624, and cases there cited, the district attorneys are entitled to argue their cases to the jury with the same latitude as counsel for the defense. Moreover, it is the established jurisprudence of this court that before a verdict approved by the judge is set aside on the ground of improper argument by the district attorney, the court must be thoroughly convinced that the jury was influenced by the remarks and that they contributed to the verdict. State v. Jackson, 227 La. 642, 80 So.2d 105, and numerous authorities cited there. In the instant case we are unable to determine that the jury was influenced by the remarks or that they contributed to the verdict.

■ During the examination of the coroner by the district attorney, he was asked the following question: "Doctor, will you state whether or not from your examination [of the decedent] could you tell whether or not there had been any struggle by him?" This question was objected to as calling for the opinion of the witness. The objection was overruled, and the witness answered: "There was no evidence of a struggle." Counsel then reserved Bill No. 2.

This question, as we view it, does not call for an opinion of the witness. What the district attorney meant was: "Were there any signs of a struggle?" Such signs were physical facts which could have been ob-

served by the coroner in his examination of the body.

Bill No. 10 was reserved in connection with the testimony of Mr. Ray Herd, state criminologist, who was questioned by the district attorney concerning blood spots on certain clothing. The objection was that the question called for an opinion of the witness. The trial judge in his per curiam tells us that Mr. Herd had been cross-examined at length as to his qualifications, and that he, the judge, was of the opinion that the witness was thoroughly qualified to furnish an expert opinion touching the subject matter.

As shown by the trial judge's per curiam, the witness was qualified to the judge's satisfaction. The rule is well settled that whether a witness is entitled to be heard in the capacity of expert is within the trial judge's province to decide, and his ruling will not be disturbed where no error appears. Moreover, under Article 464 of the Code of Criminal Procedure the opinions of a qualified expert are admissible on matters in the field in which he has qualified. Thus there is no merit in the objection.

Defendant was being tried for the murder of Clarence Joseph Gros, but Gros and another convict were killed in the same manner and at the same time while they lay in adjacent beds in the prison dormitory. During the trial of the case the State offered in evidence over the objection of defendant two photographs of the scene of the homicide, one showing the body of Gros and the other the bodies of Gros and the other deceased convict. The principal complaints of the appellant set forth in Bills Nos. 3 and 13 are that one of these photographs shows the bodies of two dead men and not just the body of Gros, and that these photographs were gruesome and obnoxious, were prejudicial to the accused, and served no useful purpose in identifying the body or showing the nature of the wounds, which could have been described by witnesses who saw the body.

The trial judge in his per curiam informs us that the two killings were actually one act or a continuing act, and that the evidence of the killing of one of the dead men necessarily included the killing of the other. He then says that these photographs were important to clarify to the jury the identity of the man for whose murder the accused was being tried, the position of the bodies bearing on whether there had been a struggle at the time of the killings, the probability that the two men were asleep when they were killed, and the location of their bunks with reference to the bed of the principal State's witness; that all of these matters were issues in the case, and that he considered the photographs to be relevant evidence under the circumstances. The trial judge concedes that the photo-

graphs are gruesome, and we fully agree that they are.

Appellant for reversal relies on the case of State v. Morgan, 211 La. 572, 30 So.2d 434, 436. In the Morgan case the majority of this court held that "If a gruesome photograph is not at all necessary or material evidence in the criminal prosecution it should be excluded if it may have a tendency to cause undue influence on the jury"; but in that case the court did not hold that gruesome photographs if otherwise admissible should be excluded merely because they are gruesome.

This court in two recent decisions has discussed the Morgan case and has clearly set out exactly what the law is in reference to the introduction of gruesome photographs. State v. Ross, 217 La. 837, 47 So. 2d 559; State v. Solomon, 222 La. 269, 62 So.2d 481.

In State v. Ross we said [217 La. 837, 47 So.2d 560]:

" * * * It has long been the jurisprudence of this court that photographs, properly identified, of the body of the deceased in homicide cases are admissible for the purpose of showing the nature of the crime and the facts and circumstances surrounding its commission, or to assist the witnesses in their testimony and as an aid to the jury in obtaining a better understanding of the character of the wounds. See State v. Mes-

ser, 194 La. 238, 193 So. 633; State v. Henry, 197 La. 999, 3 So.2d 104 and State v. Johnson, 198 La. 195, 3 So.2d 556. And the fact that the photographs portray a repulsive spectacle and tend to prejudice the jury furnishes no valid ground for their exclusion where they are otherwise relevant. State v. Johnson, supra; Wharton, Criminal Evidence, 11th Edition, Vol. 2, sec. 773, p. 1321; Scott, Photographic Evidence, sec. 661, pps. 570–580."

In State v. Solomon, supra [222 La. 269, 62 So.2d 484], it was stated:

"But, aside from this, the photograph was clearly admissible for identification purposes, and also in corroboration of the Coroner's procès verbal with reference to the description of the wounds and the cause of death. Albeit, we reiterate our adherence to the views succinctly expressed in State v. Johnson, 198 La. 195, 3 So.2d 556, that, where the photographs are admissible, the fact that they are so gruesome that they tend to prejudice the jury is not a valid reason for rejecting them in evidence. State v. Morgan is to be regarded as—indeed it is—a case of most unusual circumstances."

In the instant case the trial judge found the photographs to be material for the reasons set forth in his per curiam, and under the holdings of this court in the Ross and Solomon cases his rulings were clearly correct.

 While Henry Atkins, the main State's witness, was on the stand, he was asked on redirect examination the question: "Do you know what is in store for you after the trial of this case?" The witness, an inmate of Angola, answered the question by stating that he would have to be locked apart from the other prisoners as his life would be in danger. This fact was corroborated by the testimony of Warden Maurice Siegler, who stated that the witness would have to be kept in protective custody, away from the other prisoners. To the questions asked Atkins and the warden, which the court permitted the witnesses to answer, Bills Nos. 17, 18, and 19 were reserved.

In his per curiam the trial judge states:

"The State's main witness, Henry Atkins, had been assailed in every manner by defense counsel on cross examination. It had been brought out that Atkins had been convicted five times. It had been suggested in every possible manner that the witness had been promised something in order to induce him to testify. Every possible insinuation reflecting upon the character and credibility of the witness had been made by the defense counsel. In my opinion, therefore, the State had the right to ask the questions objected to in order to attempt to corroborate the testimony of the witness. See LSA R.S. 15:485."

The article of the Code of Criminal Procedure cited by the judge reads:

"Whenever a witness has been impeached or contradicted, or his character or credibility been assailed, corroborative testimony is admissible, and the testimony of an accomplice may be corroborated even before it is attacked."

We think the rulings of the trial judge were correct, and we see no merit in these bills.

The conviction and sentence are affirmed.

107 So.2d 676