443 P.2d 392

**STATE of Utah, Plaintiff and Respondent,**

v.

**Tony RENZO, Defendant and Appellant.**

**No. 11038.**

Supreme Court of Utah.

July 9, 1968.

Hatch & McRae, Salt Lake City, for defendant and appellant.

Phil L. Hansen, Atty. Gen., LeRoy S. Axland, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

ELLETT, Justice:

The appellant was convicted by a jury of the crime of voluntary manslaughter. By

this appeal he seeks his release from prison because he claims he did not have a speedy trial; and should he fail to convince this court of that claim, he asks that his conviction be reversed because two gruesome pictures were entered into evidence.

One Bertha Magera was sexually mutilated and killed on February 27, 1965. The next day appellant was arrested and charged with first-degree murder. Preliminary hearing was begun on April 1, 1965, and continued from time to time until May 5, 1965, when the committing magistrate for reasons best known to himself discharged the defendant.

The district attorney was convinced that the magistrate had erred in discharging the appellant and that the evidence was sufficient to convict the defendant of murder; but because he was extremely busy with court appearances and matters before a grand jury, he neglected to cause another complaint to be filed in the matter until December 28, 1966, at which time the appellant was again charged with first-degree murder of Bertha Magera and was released on a $2,500 bond.

A preliminary hearing was held March 23 and 24, 1967, at which appellant moved to dismiss the complaint. On April 7, 1967, the magistrate overruled the motion and bound appellant over to the district court for trial on the charge as contained in the complaint.

An information was filed April 20, 1967, charging the defendant with the crime of murder in the first degree. He was arraigned April 24, 1967, and filed a motion to dismiss and entered a plea of not guilty. Hearing on the motion to dismiss was set for May 4, 1967. Prior to hearing the motion, the district court discontinued the bond. After hearing the argument of counsel, the trial judge denied the motion to dismiss and set the case for trial June 12, 1967.

The first question posed is this: Was defendant denied a speedy public trial in violation of the Sixth Amendment to the Federal Constitution as enforced through the Fourteenth Amendment to that document? This amendment was enacted solely to compel the Federal Courts to grant speedy trials to Federal prisoners; but since the same rights of the defendant are assured by Art. I, Sec. 12, of the Utah Constitution, we will decide his claim of unreasonable delay.

It should be noted that under the Utah law there is no statute of limitation within which a prosecution for murder must be commenced. Sec. 77–9–1, U.C.A.1953. The constitutional protection afforded one relative to a speedy trial has no application until after a prosecution is instituted. See Foley v. United States, 8 Cir., 290 F.2d 562, cert. den. 368 U.S. 888, 82 S.Ct. 139, 7 L.Ed. 2d 88 (1961), holding that prosecution is not instituted until an indictment is returned or an information is filed. See also State v.

Enriquez, 102 Ariz. 402, 430 P.2d 422, 424 (1967), where it is held:

> The defendant contends that he was denied a speedy trial in violation of constitutional guarantees. The motion to dismiss the case on the grounds of a denial of a speedy trial was addressed only to the time elapsed between the defendant's arrest and the time that he was bound over to the superior court for trial. We have stated, "The rule is firmly etablished [sic] that the protection afforded by Art. 2, § 24 of the Arizona Constitution and by the Sixth Amendment right under the United States Constitu tion to a speedy trial, has no application until after a prosecution is commenced or an accused is held to answer." [Citations omitted] * * * [D]efendant was at liberty on bond during the interval between his arrest and the preliminary hearing, and there has been no showing that prejudice has resulted to the defendant from the delays.

In Bruce v. United States, 5 Cir., 351 F.2d 318, 320 (1965), the following statement of the law is made:

> The indictments were returned early in 1956. The acts which the Government charged as criminal offenses took place in the summer of 1952. The cases were tried in June 1963. The appellant makes the contention that he has been denied his constitutional right to a speedy trial, that his witnesses have died and

the memory of those who have lived has become dimmer and that he has been prejudiced by the delay. This, he says, is true notwithstanding that he took no action to require the case against him to be brought on for trial. The appellant contends that there was an unreasonable delay both in the interval between the commission of the offenses and the indictment, and the lapse of time between the indictment and the trial. *The right to a speedy trial, guaranteed by the Sixth Amendment and implemented by Rule 48(b), Fed.Rules Crim.Proc. 18 U.S.C.A., does not arise until there has been an indictment or information,* as the applicable statute of limitations is controlling as to the time within which an indictment or information must be brought. * * * [Emphasis added.]

In the case of Witt v. State, 197 Kan. 363, 416 P.2d 717 (1966), the defendant was held in jail for 20 days prior to being taken before the committing magistrate. In a subsequent proceeding he claimed failure to have a speedy trial. The court said at page 722 of 416 P.2d:

> The petitioner first contends that his constitutional rights were violated in that he did not have a speedy trial in accordance with Article 10 of the Kansas Constitution and the Sixth Amendment to the United States Constitution, and that K.S.A. 62–602 was violated in that he was not taken before an examining mag-

istrate forthwith, there being a twenty-day interval between the time he was arrested and the time he was taken before an examining magistrate.

\* \* \* \* \* \*

Undue delay in bringing one accused of crime before a magistrate was thoroughly considered in Cooper v. State, 196 Kan. 421, 411 P.2d 652. The court there held:

"Undue delay in bringing one accused of crime before a magistrate is not, of itself, a denial of due process. It is only where a preliminary delay in some way deprives an accused of a fair trial that there can be a denial of due process.

"The guaranty of a speedy trial contained in Section 10 of the Bill of Rights of the Kansas Constitution does not refer to the preliminary examination, but rather to the trial held after an indictment is returned or an information is filed, and at which the issue of guilt or innocence is to be determined."

Even though there may be a delay between the time when an information or indictment is filed and the trial of the matter, a defendant cannot claim that his constitutional right to a speedy trial has been violated unless he asks the court to grant him a trial. In this connection see the case of Pietch v. United States, 10 Cir., 110 F.2d 817, 129 A.L.R. 563, (1940), wherein the district attorney told the defendant orally and by letter that he did not intend to prosecute the matter and would dismiss it. Seven years after the alleged crime was committed, the defendant was tried and convicted. He claimed he was denied a speedy trial, and the court said at page 819 of 110 F.2d:

\* \* \* A person charged with a crime cannot assert with success that his right to a speedy trial guaranteed by the Sixth Amendment to the Constitution of the United States has been invaded unless he asked for a trial. In the absence of an affirmative request or demand for trial made to the court it must be presumed that appellant acquiesced in the delay and therefore cannot complain. [Citations omitted.]

The United States Court of Appeals, Eighth Circuit, in Davidson v. United States, 312 F.2d 163, 167 (1963), in answering a claim of lack of speedy trial, said:

The failure to bring the defendant to trial more promptly would certainly not warrant the invalidation of his conviction. If a defendant wants a speedy trial, it is his duty to ask for it. Phillips v. United States, 8 Cir., 201 F. 259, 262; Frankel v. Woodrough, 8 Cir., 7 F.2d 796, 798. A delay which is not "purposeful or oppressive" is not violative of the constitutional right of a defendant to a speedy trial. Pollard v. United States,

352 U.S. 354, 361, 77 S.Ct. 481, 485, 1 L. Ed.2d 393. * * *

In the case of State v. O'Leary, 25 N.J. 104, 135 A.2d 321 (1957), the defendant was charged with murder. The victim died May 4, 1929. O'Leary and others were indicted 20 days later. O'Leary was arraigned December 7, 1934. He entered a plea of not guilty and was released of $10,000 bail. The case remained dormant until January, 1957, when the prosecutor discovered the open indictment. O'Leary was arrested and admitted to bail on his own recognizance. The trial began March 18, 1957, and defendant was convicted. He claimed on appeal that he had been denied a speedy trial. In speaking of this delay, the court at pages 325–326 of 135 A.2d said:

Our law is settled by State v. Smith, 10 N.J. 84, 89 A.2d 404 (1952), where the majority of this court held:

"Defendants never had under the constitutional guaranty of a speedy trial the right to have an indictment dismissed; they merely could apply to the court to fix a day certain and on the failure of the State to proceed they could be discharged on their own recognizance or a judgment of acquittal entered." (10 N.J. at page 93, 89 A.2d at page 408).

O'Leary made no application to have a date fixed for trial nor did he ever make a single move to have his case disposed of. Thus, the facts *sub judice* are entirely different, and less favorable to appellant, from those in the Smith case, where the dissent points out that Smith had made demands for a speedy trial which were ignored. Nevertheless, under the highly unusual circumstances present here, the slightest proof of embarassment [sic] occasioned by the delinquency of the prosecution might well, I am sure, have tilted our decision in O'Leary's favor.

* * * * * *

We conclude, on the basis of the doctrine enunciated in State v. Smith, supra, that appellant should not go free merely because his trial was long delayed when there is not an iota of evidence nor even a credible affirmative statement to the effect that he was thereby impeded in making his defense.

In the case of State v. Bohn, 67 Utah 362, 248 P. 119 (1926), complaint was filed against the defendant on September 27, 1922. The defendant was held to answer the charge, and an information was filed November 23, 1922. The defendant filed a motion to suppress evidence. The trial court granted the motion, and the defendant stipulated with the State to continue the case for the term. Nothing further was done in the matter until the second term of court thereafter, when the prosecutor moved to dismiss the charge against the defendant, which motion was granted by the trial court, and the defendant was released, and his bondsmen were exonerated.

In December, 1923, another complaint was filed against the defendant charging him as before. Again he was bound over to the district court and a second information filed against him December 26, 1923, identical to the prior one except as to the date on which it was drawn. Defendant then appeared and moved the court to dismiss the information and to discharge and release the defendant from custody. The motion was denied, and at the trial the defendant was found guilty. He claimed on appeal that he was not given a speedy trial. This court at page 366 of the Utah Reports, at page 120 of 248 P. said:

It is also contended that defendant was not given a speedy public trial. *It does not appear that at any time defendant requested or asked for a trial upon the information filed in the original action.* * * * The fact that the defendant had the right to ask for and have a trial or a dismissal of the action before the term of court in September, 1923, cannot avail him in the present action, if the dismissal is not a final discharge of the defendant. A defendant in a criminal action may waive his right to a speedy trial. He cannot remain inactive and afterwards complain that he has not been given a speedy trial and interpose that as a defense. * * * [Emphasis added.]

■ In the case now before this court we are asked to set a criminal free because the prosecuting attorney waited some 19 months before filing a second complaint against him. It would have been useless to have immediately filed a second complaint before the same magistrate who had just released the accused. The appellant was a free man all during the interim between the two attempts to have him held to answer to the charge, and we do not see how he was prejudiced by the delay in the filing of the second complaint. We find no error to this assignment.

■ As to the claim of prejudice because of gruesome pictures being introduced in evidence, it must be remembered that the defendant had entered a plea of not guilty and thereby cast the burden upon the State to prove beyond a reasonable doubt every element of the crime charged.

Our statute defines murder in the first degree as follows:

Every murder * * * perpetrated by any act greatly dangerous to the lives of others *and evidencing a depraved mind,* regardless of human life;—is murder in the first degree. * * * [Emphasis added.] [Sec. 76–30–3, U.C.A. 1953.]

The victim in this case was a woman. Her body, and particularly the thighs, hips, and buttocks, were severely bruised and showed evidence of much violence, such as would be caused by extremely forceful kicking. Her chest wall was fractured, and she died because of inability to breathe. In addition, the walls of her vagina showed

evidence of having been perforated with some jagged instrument such as a bamboo pole which was found in the house with what looked to be blood and hair upon the end of it.

Colored pictures were taken showing the conditions above described. At the autopsy the doctor spread the vagina so as to reveal the evidence of the internal violence, and a colored picture was taken thereof. These pictures were admitted in evidence to show a depraved mind on the part of the perpetrator of the crime.

While the pictures admitted in evidence might be improper to show outside of the courtroom, they afforded mute evidence of the depravity of the one who killed the victim. This evidence was material and relevant. It was not incompetent because it might be gruesome, and practically every State in the Union has so held. A sampling of cases from the various states is listed below.

In the case of State v. Johnson, 57 N.M. 716, 263 P.2d 282 (1953), it is said at page 284:

It is argued that the court erred in the admission of certain photographs. The photographs show the scalp had been removed from the skull of the deceased, exposing fractures of the skull and certain fleshy part of the head and shoulders of the deceased. The objection made is that the the pictures are so gruesome and

inflammatory, the minds of the jurors were prejudiced thereby. We do not so appraise them. While the doctor testified in terms descriptive of the wounds, the photographs gave the jury a visual explanation of his testimony. It must be remembered that appellant was standing on his plea of not guilty when the photographs were admitted. The state was put to the task of proving the essential elements of the crime. Whether the deceased was fatally injured was an issue to be determined by the jury. The extent and nature of the wound and the atrocity of the crime also were material questions. Clearly, the photographs, though cumulative, served to corroborate the doctor's testimony and were admissible for that purpose. [Citations omitted.] The admission of photographs rests largely in the discretion of the trial court and ordinarily his decision will not be disturbed. We cannot say the court abused its discretion.

In State v. Bucanis, 26 N.J. 45, 138 A.2d 739, 73 A.L.R.2d 760 (1958), a picture was admitted into evidence taken during an autopsy of the victim. At pages 742–743 of 138 A.2d the court said:

S–26, the photograph objected to, was taken after the autopsy had been performed. The view is from a low level and close to the body. It shows a portion of the right hip, all of the torso, the right arm and the head of the de-

ceased. Appellant accurately describes the subject: "Incisions had been made allowing the flesh to be retracted to expose the abdominal organs and the inner structure of the chest. In the picture the examiner's knife lies on the exposed portion of the abdomen, a sponge and other instruments are on the table in the immediate foreground and in the corner of the table beside the subject lie organs which have been removed. The subject's head appears to have been supported and the left eye is partly open."

\* \* \* \* \* \*

Our more recent decisions involving the question *sub judice* have held, in substance, that admission is mainly, if not entirely, within the discretion of the trial judge whose decision will not be overturned save for marked abuse.

\* \* \* \* \* \*

In State v. Huff, 14 N.J. 240, 102 A.2d 8, 13 (1954), four photographs were introduced into evidence showing the body of the deceased in a grave and shortly after it had been removed therefrom. Two of these were in color and their admission was challenged upon the basis that they were "secondary, unnecessary, irrelevant and incompetent" and were "gruesome" and "horrified and sickened those inspecting the photographs." We held: "Photographs of unpleasant and gruesome aspects of a murder case are not objectionable for this reason alone, and their admission has frequently been sustained," citing many of the cases already mentioned. For the first time we approved the use of color photographs, saying there was no logical reason why they should not be admitted into evidence subject to the same limitations and restrictions already placed upon black and white photographs.

In Commonwealth v. Ballem, 386 Pa. 20, 123 A.2d 728 (1956), the charge was murder, and the identity of the victim was in issue. While alive the victim had a scar on one hand. This hand was severed from the body, and a transparency of said hand was projected onto a screen for the jury to see in determining the identity of the victim. The Pennsylvania Supreme Court held at page 732 of 123 A.2d:

\* \* \* Pistols, fruits of the crime, clothing, parts of the body of the person killed, everything pertaining to the crime which will aid the jury in its consideration of the (alleged) crime and the guilt or innocence of the accused, is admissible. The admission or exclusion of these objects and particularly of photographs is a matter which is within the sound discretion of the trial Judge, and the fact that a picture is gruesome is not sufficient to exclude it. \* \* \*

In State v. Solomon, 222 La. 269, 62 So.2d 481 (1952), the Louisiana Supreme Court had before it the same question that is presented in the instant case. The court said at page 484 of 62 So.2d:

* * * The picture was tendered in connection with the testimony of Dr. Wallace Clark after it had been identified by him as that of the person upon whom he performed the autopsy. And, when it was offered, defense counsel did not at first object on the ground that it was gruesome. On the contrary, he claimed that it was inadmissible because the identification of Dr. Clark was incomplete as the state had not proved "* * * who had the body from the time it left the barge until it showed up in the morgue."

But, aside from this, the photograph was clearly admissible for identification purposes · and also in corroboration of the Coroner's procès verbal with reference to the description of the wounds *and the cause of death*. Albeit, we reiterate our adherence to the views succinctly ·expressed in State v. Johnson, 198 La. 195, 3 So.2d 556, that, where the photographs are admissible, the fact that they are so gruesome that they· tend to prejudice the jury is not a valid reason for rejecting them in evidence. * * * [Emphasis added.]

In State v. Moore, 303 S.W.2d 60 (Mo. 1957), the defendant was prosecuted for: the murder of his wife. He claimed that. it was reversible error to admit four pictures of the deceased showing the wound and that a portion of the upper chest and left forearm had been blown away by the blast of the gun. The State offered the exhibit on the theory that the location of the wound showed that defendant acted consciously and took accurate aim when firing the gun. The Missouri Supreme Court at page 65 correctly sets forth the law in the following language:

The rule as to the admissibility of this sort of visual evidence is well settled. Demonstrative evidence of this character is admissible if it tends to connect the accused with the crime, or to prove the identity of the deceased, or show the nature of the wound, or throw any relevant light upon a material matter at issue. [Citations omitted.] Defendant concedes that the admission of this sort of evidence is largely within the discretion of the trial court, but contends that the court, in admitting the exhibits, abused its discretion, saying that the photographs were unnecessary and should have been excluded because "the identity of deceased, the position of the body and the nature of the wounds had been exactly and precisely established by other evidence."

Even if we assume that there was evidence upon all of the material facts shown by the photographs it does not,

follow that the exhibits were inadmissible. In State v. Tyson, 363 Mo. 1242, 258 S.W.2d 651, 654[4], we find this statement relating to the application of the rule: "It is not a valid objection that witnesses have testified to matters shown by photographs because pictures give a much clearer impression of many things than any oral description and that is the reason for using them." [Citation omitted.]

Our own Supreme Court has also had this matter before in the case of State v. Woods, 62 Utah 397, 220 P. 215 (1923). In that case the admission into evidence of the picture of the burned body of defendant's wife was approved by this court. In State v. Russell, 106 Utah 116, 145 P.2d 1003 (1944), the trial court admitted into evidence pictures of the deceased. Although that case was reversed on other grounds, this court approved the reception of the pictures, using the following language in the last paragraph of the opinion:

* * * The pictures of the deceased, taken after her death and showing her wounds, were clearly admissible. Even though the defendant did admit the killing, he did not admit the intent to kill and the nature of the wounds may be material on that point. The pictures showed the nature of the wounds more clearly than the testimony of witnesses could. * * *

The fact that a picture may be gruesome is no reason for excluding it from evidence if it is otherwise competent and relevant. It is a matter of discretion with the trial judge to determine whether the probative value of the picture outweighs the possible adverse effect which might be produced upon being shown to the jury. 23 C.J.S. Criminal Law § 852(1)c. This discretion on the part of a trial judge to admit or reject evidence should not be interfered with by an appellate court unless manifest error is shown.[1]

---

1. In the case of State v. Poe, 21 Utah 2d 113, 441 P.2d 512, recently decided, the majority of this court held it to be an abuse of discretion on the part of the trial judge to admit into evidence colored pictures of the victim's cranium with the brains removed. In that case the verdict was such that the death penalty was mandatory. It is doubtful that the case would have been reversed had the jury by its verdict recommended leniency. However, we cannot judge the admissibility of evidence by the verdict rendered. Evidence is either admissible or not admissible at the time it is offered. To hold otherwise is but to confuse the trial judge and render nugatory the statute which provides the death penalty for murder in the first degree where the jury does not recommend leniency.

In the concurring opinion it is stated: "In the Poe case there was no question whatever as to whether the deceased was shot with intent to kill, * * *" I do not understand that to be a fact, for under the plea of not guilty the defendant was entitled to all favorable presumptions, such as, for example, that death resulted from suicide, self-defense, accidental killing, heat of passion, etc.

The evidence in this case would justify a belief that the perpetrator of the crime stomped and kicked the woman victim to death and that either before or after death he inserted a large bamboo pole into the vagina of the victim, causing a great deal of ripping and tearing of the tissues.

█ The jury found the defendant guilty of the included offense of voluntary manslaughter upon evidence which was sufficient to sustain the verdict. We find no merit to the contention that the court erred in receiving in evidence the pictures complained about.

The judgment of the trial court is affirmed.

TUCKETT, J., concurs.

CROCKETT, Chief Justice (concurring):

I concur in affirming the conviction, but desire to make the following comments about the two issues raised:

As to the defendant not being given a speedy trial: (1) After he was charged and arraigned in this case there was in fact no unusual or unreasonable delay; (2) there is no indication that he asked for any speedier trial than he got; and (3) there is no indication that he was in any way prejudiced by delay.

The prosecution had to negative all of these possibilities, in order to establish murder in the first degree, and the pic-

As to receiving the pictures in evidence: The main opinion correctly points out that they were competent and probative of essential facts, which would seem sufficient to dispose of that issue. However, inasmuch as reference is made to the recent case of State v. Poe, 21 Utah 2d 113, 441 P.2d 512, and its possible application here, some further explanation seems justified.

The question of admissibility of evidence is dependent, among other things, upon the issues in dispute and upon which proof is required. In that regard there is a vital difference between the Poe case and the instant one. In the Poe case there was no question whatever as to whether the deceased was shot with intent to kill, nor as to where or how he was shot. The question was whether the defendant shot him. The facts as to where and how the deceased was shot were not only uncontested, but were amply illustrated by certain black and white pictures taken at the scene. But the prosecution went beyond any necessity of proof and introduced the offending colored slides relating to something quite separate and apart from the crime, and *which the defendant had nothing to do with causing*: the gory procedures of a pathologist. Insofar as the writer can see, they formed no neces-

tures in the Poe case were intended to do just that.

sary proof to any disputed issue in that case. This lack of probative purpose, coupled with the fact that there was a definite likelihood that they would have the effect of suggesting brutality in the crime and thus of provoking resentment and inflaming the passions of the jury against the accused, (which likelihood incidentally appears to have been borne out by the verdict), led us to believe that it was prejudicial error to admit the pictures in the Poe case.

By way of contrast: In the instant case there was a dramatically different situation. The death came about as a result of an orgy of drinking and fighting and a great deal of physical violence. There were critical questions as to whether there had been any intent to kill, and as to the cause of death. On those issues the pictures objected to in this case were *probative as to acts committed by the defendant upon the victim.*

It must be agreed that pictures which may provoke antipathy against the accused should be looked at with particular care in all murder cases because the jury has two major issues to determine: the guilt of the defendant, and if guilty, whether he should suffer death or have life imprisonment. And such pictures should not be admitted unless they are essential proof on disputed issues. However, as set forth

in the authorities cited in the main opinion, where they are essential to the proof on disputed issues, as they were here, the mere fact that they are offensive to sensibilities should not make them inadmissible. See particularly State v. Woods, 62 Utah 397, 220 P. 215; State v. Russell, 106 Utah 116, 145 P.2d 1003; and see also discussion in McKee v. State, 33 Ala.App. 171, 31 So.2d 656, and authorities therein cited.

For the reasons above set forth, I concur in the holding that under the circumstances in this case receiving the pictures in evidence was not error, and in affirming the conviction.

CALLISTER, J., concurs in the concurring opinion of CROCKETT, C. J.

HENRIOD, Justice (concurring in part and dissenting in part):

I concur, without qualification in the main opinion's reasons and authorities cited anent the speedy trial issue.

Consistency requires me to dissent as to the colored pictures being admitted in evidence. I think that permitting their admission over strong defense objection was error. I must concede that the trial court at the time of trial did not have our decision in State v. Poe,[1] before him, or the dissent therein,—which represented

1. 21 Utah 2d 113, 441 P.2d 542, June 4, 1968.

conflicting philosophies as to admissibility of such evidence. I thought the colored pictures in the Poe case to have been so shocking and inflammatory as to offend against the American tradition relating to fair trials. To be consistent I must dissent here, where I concurred there, for the very simple reason that personally J think the pictures here to be more gruesome and repulsive than those in the Poe case.

Someone may suggest that there is a difference here where defendant was convicted of manslaughter, which does not involve shooting or hanging, whereas in the Poe case the defendant faced death. There can be no logic in urging that such circumstances, i. e., degree of punishment, has any relation to the rules on admissibility of evidence,—and both cases are subject to the same rule.

In saying this I do not contend that colored pictures per se are inadmissible in evidence, but I do say that colored pictures, in particular cases, can portray scenes in an atmosphere and setting that do not reflect true reality,—being much more the vehicle of deception than the black and white ones. I am sure that if the murdered woman in this case had been a colored woman, a colored picture would not have pointed up such gruesomeness. Also, had ten cameramen simultaneously taken pictures of this woman, five would get a gambler ten if it could be demonstrated that all the pictures taken had the same tint, color and hue.

Someone might suggest there was a difference in the Poe case, since the person taking the picture took it after a third person had cut half of the deceased's head off *after* the homicide, whereas in the instant case the picture was taken after death but *before* anybody fooled around with the torso. The distinction is quite fatuous, since the Poe case went off on the ground of inadmissibility because of gruesomeness, and the same logic applies here, where, in my opinion the gruesomeness grew some in the instant case.

Mr. Chief Justice Crockett's concurrence here seems to be an inconsistent departure from his concurrence in State v. Poe. I would invite those of the majority to include the picture in the decision, for publication, *in color*, in the Pacific Reporter.

No matter how we feel about this case, in fairness the man should have another trial sans colored stereoscope.