FOURNET, Chief Justice.
The defendant, Donald E. Benjamin, is appealing from his conviction on a charge by indictment with the murder of Dorothy Spadoni and sentence to death.
According to the record, the accused, armed with a long knife, entered a washateria near midnight on August 13, 1965 as James W. Colbert and Miss Dorothy Spadoni were about to complete certain laundering, whereupon he forced them into a closet-like opening at the rear of the *51 room and ordered Miss Spadoni to remove her clothing. After she had removed her blouse and slacks, Benjamin reached toward her to cut her brassiere strap at which time Colbert grabbed the blade of Benjamin’s knife and stabbed him with a pocket knife. In the brief savage struggle that ensued Colbert was brutally cut by Benjamin who then ran out of the Washateria as Colbert managed to struggle to a nearby bakery where he told the baker to call the police, then fainting from loss of blood. As Miss Spadoni was attempting to follow Colbert, with all her clothes removed except her underpants, Benjamin slashed her on her body and head with his knife and ran off, leaving her bleeding to death in the gutter in front of the washateria where the police found her upon arriving at the scene a few minutes later, finding his long knife broken in two pieces beside her. When Benjamin returned home his family noticed his highly excited condition and the small pen-knife wound on his chest and upon learning the details of the Spadoni killing from the newspapers and television, they questioned him about where he had been on the night of the crime and how he had been stabbed. A few days later Benjamin was surrendered to the police by his family, accompanied by his attorney. While in the presence of his attorney Benjamin put on the white T-shirt which the police found covered with blood stains in the neighborhood of the washateria on the night of the crime and the cut holes in the shirt matched closely the wounds on Benjamin’s chest and on the same day he was identified by Colbert as the assailant. Ten days later the Orleans Parish Grand Jury returned an indictment. charging Benjamin with the murder of Miss Spadoni. The trial commenced on October 10, 1966 and while five bills of exception were reserved during the course of the trial, only two are relied upon for the reversal of his conviction and sentence.
Bills of Exception Number 1 and 2 will be treated together inasmuch as both were reserved when the trial judge permitted certain photographs of the deceased to be admitted into evidence over the objection of defense counsel. State Exhibit 8 is a picture taken by the police photographers showing the exact position in which Miss Spadoni was found upon the arrival of the investigating officers, i. e., lying face down in the gutter, her back covered with enormous knife wounds with the broken knife blade with which she was slashed lying next to her. The other exhibit, State-11, is also a picture taken by a police photographer of Miss Spadoni in the morgue disclosing knife wounds on her face and neck.
Counsel for defendant, relying on the decision of this court in the case of State v. *53 Morgan, 211 La. 572, 30 So.2d 434, contends the introduction into evidence of these pictures were gruesome and unnecessary and served no purpose except to prejudice the jury.
The holding in the Morgan case applied to the particular facts of that case and as pointed out by this court in the case of State v. Solomon, 222 La. 269, 62 So.2d 481, “State v. Morgan is to be regarded as * * * a case of most unusual circumstances.” In disposing of the identical issue posed here in the Solomon case we held, “ * * * The photograph was clearly .admissible for identification purposes and ■also in corroboration of the Coroner’s procés verbal with reference to the description of the wounds and cause of death. Albeit, we reiterate our adherence to the views succinctly expressed in State v. Johnson, 198 La. 195, 3 So.2d 556, that, where the photographs are admissible, the fact that they are so gruesome that they tend to prejudice the jury is not a valid reason for rejecting them in evidence.” See also, State v. Stahl, 236 La. 362, 107 So.2d 670, and State v. Ross, 217 La. 837, 47 So.2d 559.
We, therefore, conclude that the trial judge admitted into evidence the two photographs in accordance with the rule of law set out hereinabove.
Counsel is urging for the first time in this court that although at the time of the trial of this case the decision of the United States Supreme Court in the case of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 770, 20 L.Ed.2d 776, had not been handed down, since made retroactive,[1] is, therefore, controlling in this case wherein approximately 40 jurors were excused for cause because they entertained conscientious scruples against infliction of the death penalty.
A review of the record of the examination of these prospective jurors filed in this court by agreement of counsel supports counsels’ contention that these jurors were summarily excused for cause upon their admission that they entertained conscientious scruples against the death penalty, without any objections being urged on the part of the defendant since under the law of our criminal procedure existing at the time one of the enumerated challenges for cause of a prospective juror was if he expressed “conscientious scruples against the infliction of capital punishment.” [2]
Counsel for the state concedes the rule ' laid down by the United States Supreme *55 Court in the Witherspoon case must he applied retroactively and, if applied in the case at bar, contends selection of a jury in violation of the Witherspoon decision only invalidates the sentence of death, hence, requires that this court “qualify the verdict of the jury by adding the words 'without capital punishment’, and remand the case for sentencing under the qualified verdict.”
In a per curiam opinion of this court[3] this identical issue was adversely decided to the contention of the state when urged in the application for rehearing in State v. Turner, 253 La. 763, 220 So.2d 67, in which in applying the Witherspoon decision we reversed the conviction and sentence and remanded the case for a new trial.
As we must follow the holding of the United States Supreme Court in the Witherspoon case, we have no alternative but to conclude that the defendant did not have a fair and impartial trial.
For the reasons assigned the conviction and sentence of appellant are set aside and the case is remanded to the district court for a new trial.

. See, Spence v. North Carolina, Ellison v. Texas, and Jackson v. Beto, 392 U.S. 649, 88 S.Ct. 2290, 20 L.Ed.2d 1350.

. Article 798 of our Code of Criminal Procedure has since been rewritten by the Legislature in order to comply with the decision of the United States Supreme Court in the Witherspoon case. See, Act 13 of the Extraordinary Session of 1968.

. In denying the application for rehearing this court stated: “The application for rehearing urges that in disposing of this ease on appeal we should have only annulled the death sentence and remanded for sentence to life imprisonment instead of reversing the conviction, annulling the sentence, and remanding for new trial.
The application is denied. However, that portion of our decree which reversed the conviction and remanded for a new trial is not intended to, nor does it, apply to those cases where the conviction and sentence have become final after appellate review or by elapse of time for appeal.” (Emphasis added.)